Julius CORPUS and Calvin Sellars, individually and on behalf of all other inmates of the Texas Department of Corrections, Plaintiffs,

v.

W. J. ESTELLE, Jr., Director of the Texas Department of Corrections, Defendant.

Civ. A. Nos. 68–H–348, 69–H–905.

United States District Court,
S. D. Texas,
Houston Division.

Dec. 12, 1975.

William Bennett Turner, San Francisco, Cal., Frances T. Freeman Cruz, Chicago, Ill., for plaintiffs.

John L. Hill, Atty. Gen. of Tex. (Calvin Botley, Asst. Atty. Gen., Austin, Tex., and Harry H. Walsh, Asst. Atty. Gen., Huntsville, Tex.), for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW:

SEALS, District Judge.

The following constitute the findings of fact and conclusions of law applicable to the above styled and numbered cause of action.

### FINDINGS OF FACT

1. This is a class action brought by prisoners confined in the Texas Department of Corrections (the "TDC"), seeking declaratory and injunctive relief against the Director of the TDC.[1] The action

---

1. On March 2, 1973 plaintiffs filed a motion substituting W. J. Estelle, Jr. as party defendant, and adding Julius Corpus as a party plaintiff. Mr. Estelle is now Director of the TDC. Pursuant to Rule 25(d)(1), the caption of this action should be amended so that henceforth W. J. Estelle, Jr. is named as the defendant. The Court previously ordered, at the hearing held on August 13, 1970, that Calvin Sellars could intervene as an additional plaintiff. Mr. Corpus and Mr. Sellars are both prisoners confined in the TDC. The caption of this action should be amended so that henceforth Julius Corpus and Calvin Sellars are the named plaintiffs suing on behalf of the class of TDC prisoners pursuant to Fed.R.Civ.P. 23(b)(2).

was originally filed on April 19, 1968. The amended complaint, filed April 28, 1969, challenged, *inter alia*, the TDC practice of prohibiting all forms of giving or receiving legal advice among prisoners.

2. On December 9, 1971, the Court of Appeals for the Fifth Circuit reversed this Court's decision upholding the TDC legal assistance prohibition. *Novak v. Beto*, 453 F.2d 661 (5th Cir. 1971). Defendant did not file any pleading in this court in response to the decision of the Fifth Circuit; thus, on August 30, 1972, Plaintiffs filed a motion for entry of an injunction, to implement the Fifth Circuit's decision. A chambers conference was held on November 9, 1972, and the Court directed Defendant to conduct a "survey of other state prison systems to determine the extent to which other states allow prisoners to give legal aid to fellow prisoners." On December 5, 1972, Defendant filed a motion for judgment, describing a new TDC legal assistance program and contending that the TDC could continue its legal assistance prohibition. The results of defendant's survey of the other systems were filed on December 15, 1973.

3. Thereafter, plaintiffs conducted certain discovery concerning the legal services provided by TDC, the results of which are before the Court. Included are defendant's answers to interrogatories, the deposition of Harry Walsh (then head of the TDC legal program) and certain documents. The Court bases these findings on these matters and on all matters of record, including the stipulation of the parties filed May 21, 1974, the record made in the original trial of this action in December, 1969, the evidentiary hearing held on August 13, 1970, and the hearing held on October 16, 1975.

4. At some point during this litigation, the TDC formalized its practice of prohibiting prisoner legal assistance in a written rule. As adopted on March 11, 1974, Rule 3.1119 made the following a disciplinary violation:

The practice of law by one inmate for, or on behalf of, another inmate, in-

cluding the giving of any legal service or advice by one inmate to another inmate. As used herein, the terms "practice of law" and "giving of legal service or advice" shall be defined by the laws of the State of Texas.

In light of this rule, on January 17, 1974, this Court requested that Chief Judge John R. Brown appoint a three-judge court to hear this matter. No such court has been appointed. However, for reasons hereinafter stated, no three-judge court is now required. Further, in regard to the disciplinary rule quoted above, it was represented to the Court at the hearing held on October 17, 1975, that this rule has not been enforced and that there have been no disciplinary actions taken against inmates who have helped other inmates in the preparation of habeas corpus and civil rights petitions and complaints, and that plaintiffs have offered no evidence of any disciplinary actions. It was also pointed out to the Court by plaintiffs that defendants have likewise offered no evidence of any breaches in prison security as a result of the lack of enforcement of this rule or by virtue of the rule quoted in Finding of Fact No. 6, *infra*. From these facts, the Court finds that there is presently no disciplinary or security problem as a result of the present level of inmate mutual assistance in the preparation of legal instruments.

5. On November 25, 1974, counsel for plaintiffs withdrew plaintiffs' prayer for injunctive relief with regard to whether the TDC legal assistance program is adequate for habeas corpus cases and whether prisoners are entitled to legal assistance on other matters besides habeas corpus and civil rights (e. g., divorce, immigration, welfare, civil matters, etc.). As to these two issues, plaintiffs henceforth seek only a declaratory judgment. An injunction is sought only in regard to the prohibition of prisoner assistance on civil rights matters. The Court was informed at the hearing held on October 17, 1975 that the reason for the withdrawal of the prayer for injunctive relief as to plaintiffs' rights in regard to habeas corpus and general civil matters was

that this obviated the need for a three-judge court.

6. On March 6, 1975, the TDC amended its rule (now numbered 3.11s), to add the following:

> Nothing in this regulation shall be construed so as to prevent one inmate from helping other inmates in connection with civil rights suits or in habeas corpus action for the restoration of good time, solitary confinement, loss of PIP points or reduction in class, if an alternative source of legal assistance has not been furnished by the Texas Department of Corrections. This exception does not authorize any inmate to charge for such services or to extract payment in any form. A request for or acceptance of payment shall be considered a major disciplinary violation.

7. TDC Rule 3.11s is construed by the TDC to prohibit any legal assistance among prisoners (except assistance on civil rights cases and the specifically-named habeas actions), regardless of whether compensation of any kind is requested or received. The TDC prohibition of legal assistance applies to both giving and receiving assistance, and prohibits any form of legal advice or help. The prohibition is not limited to cases of "practicing" law for compensation. The prohibition applies even to habeas corpus cases in which the prisoner has sought and been denied assistance by a TDC staff attorney.

 8. Even if defendant had proved that permitting prisoner legal assistance would threaten prison security or some other legitimate state interest, the TDC's absolute ban on any such assistance is not necessary or essential to serve such interests. Thus, assuming that prisoner assistance might be subject in some cases to abuse, the State's purpose can be served by (a) reasonably restricting the time and place of any assistance rendered, (b) prohibiting the giving or receiving of compensation in any form, (c) providing that prisoner assistance not interfere with normal institutional activities, and (d) disciplining prisoners for violations of rules governing legal assistance.

9. Thirty-five state prison systems responded to the survey conducted by defendant of prisoner legal assistance prohibitions. Of these, at least thirty-two (over 91%) permitted prisoners to help each other with legal work.[2] The following are examples of responses:

> *Virginia* reported that prisoners helping each other was "not a substantial problem."
>
> *Maine* —"Inmates have been permitted to assist one another for several years and it has caused us no problems."
>
> *Nevada* —"The practice of allowing inmates to assist each other in legal matters has not caused or contributed to security problems and has not made it difficult to maintain orderly operation of the prison . . . It is my opinion that our policy makes a contribution to the morale and good order of the institution."
>
> *Oregon* —"Allowing inmates to assist each other in legal matters has not caused any problems as far as the security of the institution is concerned. The whole legal library program is now much smoother and has many fewer problems than a few years ago when everything was tightly controlled . . . We feel that individual legal business is the inmates' business and that the institution should not become involved."

 10. Based on the above survey, the fact that almost all prison systems have abandoned prohibitions against legal assistance is of substantial probative value in finding that the TDC restriction is not required by a legitimate penal interest. *Cf. Brown v. Peyton*, 437 F.2d 1228, 1232 (4th Cir. 1971). Defendant has not offered any evidence of security

---

**2.** It is likely that even more systems *now* permit such legal assistance, because of the Supreme Court's ruling in *Wolff v. McDonnell*,

418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Defendant's survey was conducted in 1972.

problems in the systems permitting legal assistance.

11. The TDC does have, as a result of this action, a legal assistance program providing assistance in habeas corpus and occasional civil matters. The program offers no legal assistance to prisoners with certain kinds of legal problems, including (a) civil rights actions or other legal claims against the prison administration, (b) "small" civil claims, and (c) certain divorces. In regard to divorces, the TDC staff attorneys will provide a defense for inmates, but will not aid the inmates in instituting divorces unless it would have some effect on their ability to conform to prison conditions or on their eligibility for parole. Thus, as Mr. Walsh, the former TDC head attorney testified on deposition, the TDC program excludes civil rights actions, tort claims against the state, certain divorces, civil claims not involving "substantial" amounts and prisoner claims for "time cuts" and "back jail time." Mr. Walsh further testified on deposition that "inmates have civil problems that are important"; but the program excludes claims deemed by the TDC lawyers to be too small to justify their time. The TDC does not provide any alternative to prisoner mutual assistance on matters not included in the TDC assistance program.

12. The Fifth Circuit placed the burden on defendant to justify any legal assistance prohibition "by producing evidence that establishes *in specific terms* what the need is for legal assistance on habeas corpus matters in the TDC, and by demonstrating that it is reasonably satisfying that need." 453 F.2d at 664 (emphasis by the Court). Defendant has not met his burden of proof. As to habeas corpus alone, defendant has not demonstrated that the TDC program meets the needs of the prisoner population for legal assistance. In this regard, defendant stated in answer to an interrogatory that the TDC has "not conducted any study, or proposed any questionnaire to inmates or systematically undertaken any investigation to determine the needs of TDC inmates for legal assist-

ance." Nor has defendant developed any method for measuring the effectiveness of the TDC program in meeting the needs of the inmates.

13. Since the Supreme Court's decision in *Wolff, supra,* the TDC has quite apparently made a substantial effort to implement the standards of that case. Evidence was admitted at the hearing held on October 17, 1975 as to the caseload of the TDC staff attorneys. The TDC is presently authorized by an appropriation from the state legislature to employ twelve attorneys, however, at the present time they only have nine, one of whom is apparently going to be leaving in the near future, and the full staff number has never been achieved. The current Director of the program, Mr. Ted Redington, has served in that position since February, 1975, and his testimony was offered on October 17, 1975. Mr. Redington was previously a staff attorney at TDC, and received his Juris Doctor degree from the Southern Methodist University in May, 1973. His duties are principally administrative so that he carries a caseload substantially lower than the other attorneys. Monthly reports are kept on the work of each attorney and are broken down into two basic classifications: (1) new requests, i. e., requests for assistance from inmates who never before made any requests, or from inmates who do not have matters already under consideration by a staff attorney; and (2) other matters handled by an attorney which can include additional unrelated requests from inmates who have cases pending. The total number of new requests in 1974 was 2,824. The number of new requests for 1975 as of the hearing on October 17, 1975 was not available, but the average number of new requests per month was in excess of 200. However, as noted above, new requests do not comprise the total attorney caseload which is approximately 400 per year, which is derived from the testimony of Mr. Redington that each staff attorney receives between 30 and 40 new cases per month from an inmate population of 18,000, and that only about 20%

of that population ever makes requests for legal assistance.

14. While TDC staff attorneys cannot make appearances for inmates in certain cases, e. g., an action against the TDC or an officer of the TDC, inmate civil rights action under 42 U.S.C. § 1983, habeas corpus actions attacking disciplinary proceedings resulting in loss of good time, and actions under the Texas tort claims act, they can and do advise and counsel inmates as to the inmates' rights and likelihood of success and the attorneys may even draft pro se instruments. It should be noted that civil rights actions under § 1983 will be undertaken by staff attorneys if they are not against TDC, at least one has been filed against the Texas Department of Welfare, and others could presumably be prosecuted in the future against persons or agencies other than the TDC.

15. In the matter of habeas corpus petitions, TDC staff attorneys filed 79 petitions in state and federal proceedings in 1974, and 52 in 1975 as of September 30, 1975. However, no records are kept as to the success rate of the habeas petitions. An inmate presents a written request through TDC internal mail routes, and he is then interviewed. If the request is denied, a staff attorney will explain the legal authorities on which the refusal is based. The staff attorney may even prepare a pro se petition for the inmates, although no statistics on this practice were offered, and, of course, the inmate may proceed pro se without assistance. The inmate may also present his request again to a different staff attorney, but in the event that he receives no assistance from any of the staff attorneys he has no avenue of administrative appeal from the denial of legal assistance. If an inmate is totally or functionally illiterate and the staff attorneys refuse his request for habeas assistance, they may help him write to a court for assistance, but no statistics were offered on this alternative either. The Court was not able to determine on the basis of any tangible evidence what alternatives exist for the non-English

speaking or functionally illiterate inmates notwithstanding the existence of the TDC staff attorney program. The Court can only conclude that such inmates fare just as badly as they would if no TDC staff attorneys were employed, and that as a result of the existence of the rule against inmate mutual assistance on habeas matters they are foreclosed from having reasonable access to the courts.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the subject matter and the parties in this cause of action, and venue is proper in the Houston Division of the Southern District of Texas.

2. The first legal issue to be adjudicated concerns the TDC rules and regulations concerning inmate mutual assistance in cases arising under 42 U.S.C. § 1983. The parties are not in disagreement, as well they could not be, that inmates are permitted to assist each other in the preparation of civil rights cases based upon the recent Supreme Court decision in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Because *Wolff* clearly delineated the answer to this question, there is no need to convene a three-judge court if an injunction is to issue. *Gates v. Collier,* 501 F.2d 1291, 1298 (5th Cir. 1974). Therefore, the only question that remains is whether or not an injunction is proper in light of the TDC amendment of its former rule prohibiting such activities. The TDC presently permits inmates to assist each other in § 1983 cases, but not in any other case even if the action is in the nature of one under the Civil Rights Act challenging the conditions of their confinement, e. g., an action under the state tort claims act.

3. Accordingly, the Court concludes that the TDC rule of practice prohibiting prisoner legal assistance on civil rights matters is unconstitutional and will issue an appropriate injunction. The TDC's amendment of its rule on March 6, 1975, almost seven years after this action was filed, does not moot the need for injunc-

tive relief. For many years the legal assistance prohibition was maintained without any formal rule. The TDC did not change its formal rule until almost a year after *Wolff v. McDonnell.* The TDC amended rule could be rescinded at any time. "Changes made by defendants after suit is filed do not remove the necessity for injunctive relief, for practices may be reinstated as swiftly as they were suspended." *Gates v. Collier,* 501 F.2d 1291, 1321 (5th Cir. 1974).

4. The second question presented by this case, as to which Plaintiffs seek a declaratory judgment and not an injunction, is the constitutionality of the TDC rule that inmates may not assist each other in the preparation of habeas petitions in light of the existence of the staff attorneys who offer assistance in this area. This fairly recent TDC rule is clearly a result of the Supreme Court's pronouncements in *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), and *Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). Therefore, this Court must decide whether or not the TDC is providing a reasonable alternative to inmate mutual assistance in habeas corpus cases. As the Court of Appeals held in its reversal of this Court's first ruling on this question, "the State [has] the burden of justifying its regulation against inmate assistance by producing evidence that establishes *in specific terms* what the need is for legal assistance on habeas corpus matters in the TDC, and by demonstrating that it is reasonably satisfying that need." *Novak v. Beto,* 453 F.2d 661, 664 (5th Cir. 1971). It is the opinion of this Court that Defendants have failed to meet this burden, and have not shown specifically what is needed and whether or not the nine attorneys presently employed by TDC for this purpose are adequate. No evidence was offered as to the number of requests for assistance in habeas cases

that were refused, or the number of cases filed pro se or through outside counsel[3]. The Court is of the opinion that the present legal staff in proportion to the present inmate population is unreasonably low, and that a reasonable alternative has not been provided. An inmate who is turned down when he requests habeas assistance is in the same position as if the staff attorney program did not exist. It is no balm to the illiterate or non-English speaking inmate that there exist staff attorneys for him to see if, after being turned down, he is barred from seeking assistance from the only source left to him, other inmates. This Court and plaintiffs clearly recognize the problems that the TDC may face if the ban on inmate assistance in habeas matters is lifted. However, there was neither evidence nor conjecture offered as to the creation of discipline or security problems by such a change in current practices. As noted above, the TDC has recently permitted considerably more inmate mutual assistance than ever before and there was no evidence offered of increased discipline or security problems. As the TDC permits even greater amounts of inmate mutual assistance, it is possible that there may occur some discipline or security problems, in which event the TDC will be permitted to implement and enforce reasonable rules and regulations concerning the conduct of such inmate assistance. Therefore, in accordance with plaintiffs' amended prayer for relief, a declaratory judgment will issue to the effect that the TDC prohibition against inmate mutual assistance on habeas corpus matters in its present form is unconstitutional. Such declaratory judgment may issue without the necessity of convening a three-judge court. *Sands v. Wainwright,* 491 F.2d 417, 422 (5th Cir. 1973), *cert. denied,* 416 U.S. 992, 94 S.Ct. 2403, 40 L.Ed.2d 771 (1974).

5. The third question presented by plaintiffs is whether or not a de-

---

**3.** The Court has made an informal survey of its own docket of state habeas cases. There are 24 pending cases of which only one has TDC staff counsel representing the Petitioner,

16 are pro se, 2 have privately retained counsel, 4 have court-appointed private counsel, and one has the Federal Public Defender as court-appointed counsel.

claratory judgment should issue to the effect that the TDC prohibition against inmate mutual assistance in general civil matters, that is matters other than civil rights and habeas corpus, is also unconstitutional. It is the opinion of this Court that the right of free access to the courts is no less important in general civil matters than it is in habeas and civil rights cases. While the decisions dealing with habeas and civil rights actions have not reached this question, they have not foreclosed it. It is apparent that the sphere of constitutional rights to be accorded to prison inmates has been increasing, and that the logical extension of a holding that inmates must be permitted to aid each other in the preparation of habeas and civil rights actions is that they should also be permitted to help each other in general civil matters. It is beyond cavil that the Due Process clause of the Fourteenth Amendment assures "that prisoners be granted 'reasonable access to the courts . . .'" *Goff v. Jones*, 500 F.2d 395, 397 (5th Cir. 1974). This Court is of the opinion that such reasonable access should extend to general civil matters, but, again, within reasonable guidelines to be established by the prison system as to the exercise of such constitutional rights. The Court is of the opinion that the effect on inmate discipline and prison security by the extension of inmate mutual legal assistance to include general civil matters will not be unmanageable and that reasonable guidelines by the TDC will adequately counteract such effects. Therefore a declaratory judgment will be entered to the effect that the TDC prohibition against inmate mutual assistance on general civil matters is unconstitutional. Such declaratory judgment may issue, again, without the necessity of convening a three-judge court. *Sands v. Wainwright, supra.*

To the extent that any of the preceding findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any of the preceding conclusions of law constitute findings of fact, they are adopted as such.

## JUDGMENT

Pursuant to the Findings of Fact and Conclusions of Law signed and entered this day, it is hereby

ORDERED, ADJUDGED and DECREED, as follows:

### Injunction

1. Defendant, his agents, employees, successors and those acting in concert with him are enjoined from maintaining or enforcing any rule or practice prohibiting prisoners of the Texas Department of Corrections (TDC) from giving or receiving legal assistance with regard to civil rights matters.

2. Enforcement of TDC Rule 3.11s is enjoined insofar as it prohibits prisoners from giving or receiving legal assistance with regard to civil rights matters.

3. Defendant may promulgate reasonable rules governing the time and place of such legal assistance among inmates, and may prohibit inmates from demanding or receiving compensation for such assistance. If Defendant elects to promulgate such rules, he shall file proposed rules with the Court within sixty (60) days of the entry of this Judgment and he shall serve a copy thereof on the attorney for Plaintiffs. Plaintiffs shall have twenty (20) days thereafter within which to file objections and the Court will then hear and determine any such objections.

4. Defendant shall promptly give notice of this Judgment to the TDC prisoner population by means reasonably calculated to reach them, including, but not limited to all inmate bulletin boards, notice posted in all TDC writ rooms, and the TDC newspaper.

### Declaratory Judgment

5. The TDC rule or practice of prohibiting prisoners from giving or receiving legal assistance with regard to habeas corpus matters is invalid.

6. The TDC rule or practice of prohibiting prisoners from giving or receiving legal assistance with regard to other general civil legal matters is invalid.

*Retention of Jurisdiction*

7. Jurisdiction of this Court is retained for a reasonable period for the purpose of supervising compliance with this Judgment and for any other equitable purpose.