**Julius CORPUS, Plaintiff-Appellee,**

v.

**W. J. ESTELLE, Jr., Director, Texas Dept. of Corrections, Defendant-Appellant.**

**No. 78–2194.**

United States Court of Appeals, Fifth Circuit.

Oct. 26, 1979.

Brian E. Berwick, Asst. Atty. Gen., Austin, Tex., for defendant-appellant.

William Bennett Turner, San Francisco, Cal., Mrs. Frances T. Cruz, Washington, D. C., Jack Greenberg, James M. Nabrit, III, Joel Berger, New York City, for plaintiff-appellee.

Before WISDOM, HILL and VANCE, Circuit Judges.

WISDOM, Circuit Judge:

The complaint in this action was filed in April 1968. For the third time this case has surfaced in this Court. Ronald Novak filed the first case, pro se, as a § 1983 class action on behalf of all those in custody of the Texas Department of Corrections (TDC). He sought, among other things, declaratory and injunctive relief against a TDC practice of prohibiting legal assistance by one inmate to another. The district court found against the plaintiff class. *Novak v. Beto*, S.D.Tex.1970, 320 F.Supp. 1206. We reversed and held that the TDC could not enforce the prohibition until it provided an adequate legal assistance program for prisoners. *Novak v. Beto*, 5 Cir. 1971, 453 F.2d 661.

In spite of our decision, the TDC continued to enforce the prohibition. In 1972 the plaintiffs renewed proceedings to enforce this Court's decision. The TDC vigorously resisted. It adopted a formal rule permitting prisoners to assist each other, but only in § 1983 cases; it made assistance in any other matter a violation of discipline. The district court enjoined the TDC "from maintaining or enforcing any rule or practice prohibiting prisoners . . . from giving or receiving legal assistance with regard to civil rights matters". It also issued a declaratory judgment stating that the "TDC rule or practice of prohibiting prisoners from giving or receiving legal assistance with regard to habeas corpus . . . [and] general civil legal matters is invalid". *Corpus v. Estelle*, S.D.Tex.1975, 409 F.Supp. 1090, 1097. The TDC appealed. We affirmed in *Corpus v. Estelle*, 5 Cir. 1977, 551 F.2d 68.

The plaintiffs then sought fee awards under the Civil Rights Attorney's Fees Awards Act of 1976 (Act).[1] The Act had

---

1. Pub.L. No. 94–559, 90 Stat. 2641, 42 U.S.C. § 1988 (1976). The Act provides:

   In any action or proceeding to enforce a provision of [§§ 1977, 1978, 1979, 1980, and 1981 of the Revised Statutes] [42 U.S.C. §§ 1981–1983, 1985, 1986], Title IX of Public Law 92–318 [20 U.S.C. §§ 1681 *et seq.* (1976)], or in any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a

taken effect two months before the appellate argument on the merits in *Corpus v. Estelle.* The district court awarded a total of $38,845. Still vigorously fighting a rear guard action, the Attorney General of Texas sought a stay pending appeal, arguing that the Eleventh Amendment barred the award. When *Hutto v. Finney,* 1978, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522, foreclosed the TDC's argument, the district court denied the stay. TDC constructed a new argument, and a panel of this Court granted a stay. We affirm the award, but remand for the district court to determine and award a reasonable fee for the appeal.

## I.

This appeal concerns a practice repeatedly found constitutional, carving out for reexamination a proposition embedded in the logic of many earlier decisions. In *Hutto v. Finney,* 1978, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522, the Supreme Court held that the Eleventh Amendment did not bar awards against states under the Act, including awards in cases pending at the time the Act was passed. This Court has granted such awards as a matter of course, even when the only question on appeal at the time of the passage of the Act was one of attorney's fees. *Rainey v. Jackson State College,* 5 Cir. 1977, 551 F.2d 672, 675–76. *See also Dillon v. AFBIC Development Corp.,* 5 Cir. 1979, 597 F.2d 556, 564; *Crowe v. Lucas,* 5 Cir. 1979, 595 F.2d 985, 993–94; *Universal Amusement Co., Inc. v. Vance,* 5

Cir. en banc 1978, 587 F.2d 159, 172; *Gore v. Turner,* 5 Cir. 1977, 563 F.2d 159, 163–64; *Miller v. Carson,* 5 Cir. 1977, 563 F.2d 741, 754–56; *Gates v. Collier,* 5 Cir. 1977, 559 F.2d 241; *Hodge v. Seiler,* 5 Cir. 1977, 558 F.2d 284, 286.[2]

No case, however, has raised as its sole contention that Congress lacked authority under Section 5 of the Fourteenth Amendment to provide awards under the Act, in cases pending on the date of enactment, for services rendered before that date. In support of this contention, the Attorney General points to Chief Justice Marshall's language, interpreting the necessary and proper clause, in *McCulloch v. Maryland,* 1819, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579. This is the language that the Court borrowed in *Katzenbach v. Morgan,* 1966, 384 U.S. 641, 86 S.Ct. 1717, 16 L.Ed.2d 828, with particular reference to Section 5 of the Fourteenth Amendment.

> Let the end be legitimate, let it be within the scope of the Constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consistent with the letter and spirit of the Constitution, are constitutional.

17 U.S. (4 Wheat.) at 421. The Attorney General then assumes a strict standard for evaluating whether a given means is plainly adapted to a constitutional end.[3] Finally, positing the *prospective encouragement of*

---

2. Other courts which have considered whether retroactive fee awards were proper under the Act have reached the same conclusion; no court appears to have reached a different one. *See, e. g., Perez v. Rodriguez Bou,* 1 Cir. 1978, 575 F.2d 21; *Rosado v. Santiago,* 1 Cir. 1977, 562 F.2d 114; *King v. Greenblatt,* 1 Cir. 1977, 560 F.2d 1024, *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161; *Rodriguez v. Jimenez,* 1 Cir. 1977, 551 F.2d 877; *Mid-Hudson Legal Services, Inc. v. G & U, Inc.,* 2 Cir. 1978, 578 F.2d 34; *Wisenberger v. Huecker,* 6 Cir.

*(footnote 1 continued)* provision of the United States Internal Revenue Code, or Title VI of the Civil Rights Act of 1964 [42 U.S.C. §§ 2000d *et seq.*], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorneys' fee as part of the costs. 90 Stat. 2641.

1979, 593 F.2d 49; *Bond v. Stanton,* 7 Cir. 1977, 555 F.2d 172, *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161; *Williams v. Anderson,* 8 Cir. 1977, 562 F.2d 1081.

3. The Attorney General offers no support for this standard; he appears to rely on the notion that an act of Congress is not "plainly adapted" to an end unless it is physically necessary to produce that end. *McCulloch* itself demonstrates, in terms that could hardly be clearer, that this reading of its text is incorrect. Chief Justice Marshall there argued for an expansive, not a constricted, view of the necessary and proper clause, one that would facilitate, not hamper, the activities of federal sovereignty. That view has animated our understanding of Section 5 at least since *Katzenbach.*

civil rights suits as the sole end of the Act,[4] the Attorney General concludes that awarding fees in cases pending at the time of enactment is not a means plainly adapted to that end and is therefore unconstitutional.

## II.

The Attorney General's argument rests on a misinterpretation of *Hutto v. Finney* and an inverted view of Section 5.

*Hutto* involved a challenge by the State of Arkansas to a finding that conditions in the Arkansas penal system constituted cruel and unusual punishment, and to an award of attorney's fees. The judgment included (1) an award by the district court, and (2) a fee added by the court of appeals to cover legal services on appeal. The trial court award was supported by a finding of bad faith;[5] the appellate fee by reliance on the Civil Rights Attorney's Fees Awards Act of 1976. *Finney v. Hutto*, 8 Cir. 1977, 548 F.2d 740, 742. In adding the appellate fee, the Eighth Circuit was careful to note that the Act "was signed into law . . . [at a time when this] case [was] pending resolution on appeal". *Id.*

The Supreme Court affirmed the awards. In reaching the conclusion that the court of appeals award was constitutional, Justice Stevens discussed the interrelation between the Eleventh Amendment and Section 5 of the Fourteenth Amendment.

As this Court made clear in *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614, Congress has plenary power to set aside the States' immunity from retroactive relief in order to enforce the Fourteenth Amendment. When it passed the Act, Congress undoubtedly intended to exercise that power and to authorize fee awards payable by the States when their officials are sued in their official capacities. The Act itself could not be broader. It applies to "any" action brought to enforce certain civil rights laws. It contained no hint of an exception for States defending injunction actions; indeed the Act primarily applies to

---

**4.** The Attorney General cites *Henderson v. Fort Worth Independent School District*, 5 Cir. 1978, 574 F.2d 1210, as support for this reading of congressional intent. We there noted:

> In enacting the Civil Rights Attorney's Fees Awards Act of 1976, Congress sought "to remedy anomalous gaps in our civil rights laws created by the United States Supreme Court's recent decision in *Alyeska Pipeline Service Company v. Wilderness Society*, 421 U.S. 240 [95 S.Ct. 1612, 44 L.Ed.2d 141] (1975)." S.Rep. No. 94–1011, 94th Cong., 2nd Sess. 5, *reprinted in* U.S.Code Cong. & Admin.News, pp. 5908, 5909.

574 F.2d at 1212. We further noted:

> [I]t is apparent from the legislative history of the Civil Rights Attorney's Fees Awards Act of 1976 that Congress' overriding concern was to encourage individuals, particularly members of racial minorities, to seek relief from invidious discrimination based on race, sex, religion, wealth, and other inherently offensive criteria. *See Brown v. Culpepper*, 559 F.2d 274, 278 (5 Cir. 1977); S.Rep. No. 94–1011, 94th Cong. 2d Sess. 5, *reprinted in* U.S.Code Cong. & Admin.News, p. 5908, 122 Cong.Rec. ¶ 1705 (daily ed. September 29, 1976) (remarks of Sen. Kennedy).

*Id.* It does not tire the imagination to consider that this "overriding concern" would be furthered by awarding fees in cases pending on the date of enactment. Three rationales come to mind: (1) that the awards would act as a barrier to unnecessary defense of a civil rights case; (2) that they would compensate plaintiff's attorneys for their costs; (3) that they would encourage continued active representation on the part of those attorneys engaged in protracted civil rights litigation pending at the time of enactment. Because of the standard of review appropriate in this case, *see* section II of this opinion, these rationales, each of which embodies a possible end of the extension of the Act to pending cases, are independently adequate to support the extension.

**5.** The Supreme Court noted of the district court award that:

> In this case, the award of attorney's fees for bad faith served the same purpose as a remedial fine imposed for civil contempt. It vindicated the District Court's authority over a recalcitrant litigant. Compensation was not the sole motive for the award; in setting the amount of the fee, the court said that it would "make no effort to adequately compensate counsel for the work that they have done or for the time that they have spent on the case". 410 F.Supp. at 285. The court did allow a "substantial" fee, however, because "the allowance thereof may incline the Department to act in such a manner that further protracted litigation about the prisons will not be necessary."

437 U.S. at 691, 98 S.Ct. at 2574, 57 L.Ed.2d at 534–35.

laws passed specifically to restrain state actions. *See, e. g.*, 42 U.S.C. § 1983. 437 U.S. at 693–94, 98 S.Ct. at 2575.

The Court supported its conclusion by resort to the legislative history of the Act,[6] then discussed cases pending when the Act was passed:

> The Attorney General also contends that the fee awards should not apply to cases, such as this one, that were pending when the Act was passed in 1976. But the legislative history of the Act, as well as this Court's general practice, defeats this argument. The House Report declared: "In accordance with applicable decisions of the Supreme Court, the bill is intended to apply to all cases pending on the date of enactment. . . ." H.R. Rep. No. 94–1558, p. 4 n. 6 (1976).

437 U.S. at 695 n. 23, 98 S.Ct. at 2576 (citation omitted).[7]

■ The logic of *Hutto* resolves this case. An inextricable part of the holding—that Congress successfully overcame the states' sovereign immunity by passing the Act under its Section 5 power—is the determination that Congress had the power to exercise. We cannot parse the Court's reason-ing any other way. The Attorney General has not changed the problem the *Hutto* Court addressed by focusing not on the Eleventh Amendment but on Section 5. After *Hutto,* he is merely asking us to make the latent patent.[8]

Were *Hutto* less informative on the question of Section 5 power we would reach the same result. The Attorney General's argument—that awarding fees in pending cases is not a means *closely tailored* to a constitutional end, hence is unconstitutional—is based on a misunderstanding of Section 5 jurisprudence.

As long ago as 1880, in *Ex parte Virginia,* 100 U.S. 339, 25 L.Ed. 676, the Supreme Court said that were it not for Section 5, there might be room for argument that the Fourteenth Amendment only declared a moral duty of the states. Section 5, however, embodying a principle of federal sovereignty, empowered Congress to enforce the prohibitions of the Fourteenth Amendment against the states. In *Katzenbach v. Morgan,* 1966, 384 U.S. 641, 86 S.Ct. 1717, 16 L.Ed.2d 828, the Court expressly equated the function Section 5 performed for the Fourteenth Amendment with that per-

---

**6.** The legislative history is equally plain: "[I]t is intended that the attorneys' fees, like other items of costs, will be collected either directly from the official, in his official capacity, from funds of his agency or out of his control, or from the State or local government (whether or not the agency or government is a named party)." S.Rep. No. 94–1011, p. 5 (1976) (footnotes omitted). The House Report is in accord: "The greater resources available to governments provide an ample base from which fees can be awarded to the prevailing plaintiff in suits against governmental officials or entities." H.R.Rep. No. 94–1558, p. 7 (1976). The Report adds in a footnote that: "Of course, the 11th Amendment is not a bar to the awarding of counsel fees against state governments. *Fitzpatrick v. Bitzer*". *Id.,* [at 7] n. 14. Congress' intent was expressed in deeds as well as words. It rejected at least two attempts to amend the Act and immunize states and local governments from awards. 437 U.S. at 694, 98 S.Ct. at 2576 (footnotes omitted).

**7.** By referring to "this Court's general practice", we assume that Justice Stevens meant to make it clear that the constitutional question of the validity of applying the Act to pending cases having been determined in favor of validity, the remaining question was the usual one, whether a law should be applied to cases pending on the date of its enactment. *See* section III of this opinion.

**8.** The full effects of *Hutto* have not precipitated; theory concerning state liability under the civil rights laws is somewhat turbid in the wake of *Edelman v. Jordan,* 1974, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662; *Monell v. Department of Social Services of the City of New York,* 1978, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611; and *Quern v. Jordan,* 1979, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358. This case, however, does not depend on a careful working out of the ramifications of the cases. The facts of the present case regarding timing of services for which an award was granted under the Act are essentially the same as those in *Hutto.* Here the trial court's award compensated services performed before the Act's passage; there the appellate work was done before that date. We would, of course, affirm even if the only question pending had been one of attorney's fees. *See Rainey v. Jackson State College,* 5 Cir. 1977, 551 F.2d 672, 675–76.

formed by the necessary and proper clause for the enumerated powers of Article 1. 384 U.S. at 650 & n. 9, 86 S.Ct. 1717. The equation was carried forward by *Fitzpatrick v. Bitzer,* 1976, 427 U.S. 445, 455, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614, 621.

Section 5 is the source of broad legislative authority to define and carry out the provisions of the amendment, an authority "plenary within the terms of the constitutional grant". *Fitzpatrick v. Bitzer,* 427 U.S. at 456, 96 S.Ct. at 2671. And in *Katzenbach,* the Court welcomed congressional assistance, based on Section 5, in shaping the contours of the sometimes elusive concepts embodied in the Fourteenth Amendment. In doing so, the Court made it plain that the judiciary should not lightly rebuff such congressional attempts. 384 U.S. at 653, 86 S.Ct. 1717.

■ Congress has often acted to carry out the broad purposes of the Fourteenth Amendment by enacting specific statutes. This it did in many Civil Rights Acts, starting with the Civil Rights Act of 1957. This it did in the Civil Rights Attorney's Fees Awards Act of 1976. The correct way to phrase the question of legitimacy is not, are the means closely tailored to the ends; that question fails to take into account the plenary nature of congressional power under Section 5. One must ask instead whether affirmative reasons can be adduced that Congress may *not* so act. Such reasons may include that the action traverses a power of self determination inhering in the states, as Justice Black argued in his opinion in *Oregon v. Mitchell,* 1970, 400 U.S. 112, 128, 91 S.Ct. 260, 266, 27 L.Ed.2d 272, 283. Or that it seeks to allow or to require conduct the Court would find constitutionally impermissible, or to prohibit conduct

the Court, for analytic reasons, would find permissible. *See* Sager, *Fair Measure: The Legal Status of Underenforced Constitutional Norms,* 91 Harv.L.Rev. 1212, 1239–42 (1978). Or that it encroaches upon a liberty interest of individuals. *See* Cohen, *Congressional Power to Interpret Due Process and Equal Protection,* 27 Stan.L.Rev. 603, 614 (1975).

■ The Attorney General has offered no affirmative reasons for finding that Congress has overstepped its Section 5 authority here. There are none. To borrow a phrase from James Bradley Thayer, an act of Congress taken pursuant to Section 5 is constitutional unless unconstitutional beyond a reasonable doubt. Thayer, *The Origin and Scope of the American Doctrine of Constitutional Law,* 7 Harv.L.Rev. 129, 151 (1893). Here there is no doubt at all.

III.

■ Whether retroactive fee awards are proper under the Act is no different from the question whether any new law should be applied to cases pending on the date of its enactment. New laws will be so applied unless manifest injustice [9] would result, or there is a statutory directive or legislative history to the contrary, *Bradley v. Richmond School Board,* 1974, 416 U.S. 696, 711, 94 S.Ct. 2006, 40 L.Ed.2d 476. Texas can make no serious contention .of manifest injustice, there is no statutory directive to the contrary, and the Act's legislative history requires its application. H.R.Rep. No. 94–1558, p. 4 n. 6 (1976), U.S.Code Cong. & Admin.News 1976, p. 5908.

■ We hold that the amount of the award was amply supported by the evidence.[10] On remand, the district court should take evidence on the amount of addi-

---

**9.** Contrary to the TDC's protestations about the "manifest injustice" of a new and unanticipated award covering services rendered prior to the 1976 Act, the *Texas legislature planned for just such an award.* In its 1977 amendments to Article 6252–26, Vernon's Texas Civil Statutes, the legislature acknowledged state liability for awards of damages, "costs and attorney fees" against state officers and expressly provided that such liability covers not only subsequently filed cases but also "all judg-

ments in *cases pending or on appeal on the effective date of the Act*" (August 29, 1977) (emphasis added). In short, the Texas legislature contemplated payment of fee judgments in cases pending when its statute became law.

**10.** The district court made the following findings of fact:
1. The Court is intimately familiar with the case and the efforts of counsel over almost a nine-year period. This has been

tional time required to prosecute this appeal, and should award a reasonable fee for it.

Finally, the Attorney General argues that if we order the awards paid, we should specify that they be paid on an installment basis. It appears that this argument was not presented to the district court, although the question is one properly within the discretion of that court. We therefore do not address it. *D. H. Overmyer Co. v. Loflin,* 5 Cir. 1971, 440 F.2d 1213, 1215, *cert. denied,* 404 U.S. 851, 92 S.Ct. 87, 30 L.Ed.2d 90.

The judgment is AFFIRMED, and the case is REMANDED.

an extraordinary litigation, involving difficult issues and factual situations. The several Assistant Attorneys General representing Defendant have vigorously resisted the efforts of plaintiffs' counsel at every juncture.

2. The Court finds that Mr. William Bennett Turner, plaintiffs' counsel, is an extraordinary lawyer of unquestionable integrity and credibility. As to the time and amount sought by Mr. Turner, the Court finds that all the time claimed was in fact spent and that the time claimed is significantly understated. All of the time was reasonable and necessary to prosecute this action.

. . . . .

4. Regarding the hourly rates to be applied, the Court finds the $90 an hour for trial and appellate time (both in court and in immediate preparation for court) is a reasonable rate for Mr. Turner's time throughout the course of this litigation. Because of the unique circumstances of this case, the Court finds that Mr. Turner should get the same amount for trial time and for immediate trial preparation time. The Court also finds that $75 an hour for all other services rendered by Mr. Turner is a reasonable rate.

5. Ms. Frances Cruz was less involved in the actual preparation of the case and technical planning than Mr. Turner, who actually carried the case. As to the time and amount sought by Ms. Cruz, the Court finds that Ms. Cruz spent thirty-six hours in trial and that a reasonable rate, given her experience in trial work, is $35 an hour for her time throughout the course of this litigation. The Court credits Ms. Cruz with thirty-two hours of other services and finds that $25 an hour for such time is reasonable.