**Hilda ABRAMS et al., Plaintiffs,**

**v.**

**Carla HILLS, as Secretary of the United States Department of Housing and Urban Development, et al., Defendants.**

**No. CV 75–3009–JWC.**

United States District Court,
C. D. California.

May 6, 1976.

See also, D.C., 415 F.Supp. 553.

Catherine M. Bishop, National Housing and Economic Development Law Project, Berkeley, Cal., and Ronald S. Javor, Legal Aid Foundation of Long Beach, San Pedro, Cal., for plaintiffs.

William D. Keller, U. S. Atty., Frederick M. Brosio, Jr., Asst. U. S. Atty., Chief, Civ. Div., and Stephen D. Petersen, Asst. U. S. Atty., Los Angeles, Cal., for defendants.

## OPINION

CURTIS, District Judge.

Plaintiffs, individually and on behalf of all others similarly situated, seek to compel the Secretary of Housing and Urban Development and certain officials thereof (hereinafter HUD) to implement the operating subsidy provisions of Section 236(f)(3) and (g) of the National Housing Act, as amended by the Housing and Community Development Act of 1974, 12 U.S.C. § 1715z–1(f)(3) and (g).

Jurisdiction is invoked pursuant to 28 U.S.C. § 1361. *See, e. g., Elliott v. Weinburger*, No. 74–1611 (9th Cir. Oct. 1, 1975). On December 19, 1975, this court entered Findings of Fact, Conclusions of Law and an Order granting the plaintiffs' motion for summary judgment. This cause now comes before the court on HUD's motion for rehearing of plaintiffs' motion for summary judgment.

The relevant portions of the Housing Act require that HUD "shall" establish an initial operating expense level comprised of utility and property tax expenses incurred by the owner of a federally subsidized housing project. HUD is then "authorized" to pay the housing project owner an operating subsidy for utility and property tax expenses which exceed the initial operating expense level.[1] Additionally, the Housing Act creates a reserve fund to be used by

---

1. 12 U.S.C. § 1715z–1(f)(3) provides in pertinent part that:

   "For each project there shall be established an initial operating expense level, which shall be the sum of the cost of utilities and local property taxes payable by the project owner at the time the Secretary determines the property to be fully occupied, taking into account anticipated and customary vacancy rates. At any time subsequent to the estab-

HUD to make the above operating subsidy payments.[2]

If the housing project owner is not paid this operating subsidy, the housing project owner will, of course, pass the utility and property tax expenses onto the tenants in the form of rent increases. Thus, economically speaking, the housing project owners are rather ambivalent towards the operating subsidy.

The facts of this case are not in dispute. Plaintiffs are all tenants of Meyer Park Apartments, a federally subsidized housing project designed for lower income families. On August 7, 1974, and on July 3, 1975, the owner of Meyer Park Apartments applied to HUD for rental increases which were, in part, necessitated by increased utility and property tax expenses incurred by that owner. Both of the rent increase requests were substantially approved and subsequent requests for operating subsidy payments were made to HUD. However, HUD had neither established an initial operating expense level for the Meyer Park housing project nor would it make any operating subsidy payments to that housing project's owner. Plaintiffs then brought this law suit and prevailed on their motion for summary judgment.

The thrust of HUD's arguments on motion for rehearing, which are essentially the same arguments as those made in opposition to plaintiffs' motion for summary judgment, is twofold: (1) that HUD is vested with discretion to implement the operating subsidy and (2) that contract authority must be utilized in order that the reserve

fund be used to make operating subsidy payments.

■ In support of its argument that the implementation of the operating subsidy is totally discretionary, HUD contends that by the express language of 12 U.S.C. § 1715z–1(f)(3) HUD is merely "authorized" to make the operating subsidy payments, and thus there is no duty to do so.

After reviewing the legislative history, the congressional intent and the express statutory language, every court that has considered this argument has expressly rejected it, and this court likewise rejects it. See *Ross v. Community Services, Inc.*, 396 F.Supp. 278 (D.Md.1975); *Harrison v. Hills*, No. 75–938 (W.D.Penn.1975); *Dubose v. Hills*, 405 F.Supp. 1277 (D.Conn.1975); *Parker Square Tenants v. Department of Housing and Urban Development*, No. 75–577 (W.D.Mo.1976).

■ HUD's second argument in support of its position that the implementation of the operating subsidy is not mandatory is that HUD has discretion on how to allocate released contract authority among the various federal housing programs and, therefore, is empowered to choose not to expend any released contract authority for the operating subsidy.

Congress has authorized HUD to use contract authority released prior to the enactment of the Housing and Development Act of 1974,[3] and it is undisputed that such contract authority exists. HUD merely refused to use that released contract authority.

lishment of an initial operating expense level, the Secretary is authorized to make, and contract to make, additional assistance payments to the project owner in an amount up to the amount by which the sum of the cost of utilities and local property taxes exceeds the initial operating expense level, . . . "

2. 12 U.S.C. § 1715z–1(g) provides in pertinent part that:

"The project owner shall, as required by the Secretary, accumulate, safeguard, and periodically pay to the Secretary all rental charges collected in excess of the basic rental charges. Such excess charges shall be cred-

ited to a reserve fund to be used by the Secretary to make additional assistance payments as provided in paragraph (3) of subsection (f) of this section."

3. S.Rep. No. 93–1255, 93rd Cong., 2nd Sess. 8 (1974) provides in pertinent part that:

"The Committee wishes to clarify the intent in the joint explanatory statement of the Committee of Conference on H.R. 15572 with respect to the use of operating cost subsidies for Section 236 projects that the Secretary is authorized to use available contract authority for operating subsidies for existing or new Section 236 projects."

In view of the mandatory nature of 12 U.S.C. § 1715z–1(f)(3) and the clear unequivocal intent of the Senate Appropriations Committee,[4] this refusal has previously been held, and is presently held by this court, to be an abuse of discretion. *See Dubose v. Hills, supra; Parker Square Tenants v. Department of Housing and Urban Development, supra.*

■ Finally, HUD argues that the reserve fund established by 12 U.S.C. § 1715z–1(g) cannot be used to make operating subsidy payments without expending contract authority. I find this argument to be without merit.

The express language of 12 U.S.C. § 1715z–1(g) creates a totally independent source of funds from which the operating subsidy is to be paid. Thus, the reserve fund is not subject to the restrictions applicable to other appropriation subsections contained in 12 U.S.C. § 1715z–1. *See Ross v. Community Services, Inc., supra.*

Even assuming that the existing contract authority must be utilized in order to make the operating subsidy payments from the reserve fund, HUD's refusal to use the existing contract authority is an abuse of discretion. *See Dubose v. Hills, supra; Parker Square Tenants v. Department of Housing and Urban Development, supra.*

I conclude, therefore, that HUD has a ministerial duty to implement the operating subsidy and that HUD's refusal to utilize existing contract authority to do so is an abuse of discretion. Accordingly, HUD's motion for a rehearing is denied.