**Ralph Ben DAVID et al., Plaintiffs, Appellants,**

v.

**Anthony P. TRAVISONO et al., Defendants, Appellees.**

No. 79–1186.

United States Court of Appeals, First Circuit.

Argued Feb. 1, 1980.

Decided May 16, 1980.

Max D. Stern, Boston, Mass., with whom Anne B. Goldstein and Stern & Shapiro, Boston, Mass., were on brief, for plaintiffs, appellants.

Eileen G. Cooney, Sp. Asst. Atty. Gen., Providence, R.I., with whom Dennis J. Roberts, II, Atty. Gen., Providence, R.I., was on brief, for defendants, appellees.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

PER CURIAM.

These consolidated cases represent the final shot in a ten-year battle over conditions at the Rhode Island Correctional Institution. The sole issue is the propriety of the denial by the court below of attorney's fees and costs under the Civil Rights Attorney's Fees Awards Act of 1976 (Act) to appellants, prevailing parties within the meaning of the Act. We reverse and remand.

*Litigation History*

Necessary to an understanding of the issue is an outline of the litigation spawned by Rhode Island prison conditions during the past ten years.

A complaint alleging warden brutality was filed on October 11, 1969 by prisoner Morris. Negotiations resulted in a consent decree detailing a curriculum for discipline and classification of prisoners. The interim decree is reported in *Morris v. Travisono*, 310 F.Supp. 857 (D.R.I.1970). The so-called "Morris Rules" were promulgated on October 10, 1972.

In June 1973, the rules were suspended when violence erupted at the prison. On June 25, 1973, Ben David commenced suit requesting injunctive relief. On August 10, 1973, the court granted a preliminary protective order prohibiting intimidation of plaintiffs' witnesses. We affirmed the order with modifications. *Ben David v. Travisono*, 495 F.2d 562 (1st Cir. 1974). On September 18, 1973, the district court certified as a class all inmates incarcerated at the prison. *Ben David* was consolidated with *Morris* on December 12, 1973.

The district court, in March 1974, prohibited further suspension of the Morris Rules. *Morris v. Travisono*, 373 F.Supp. 177 (D.R.I. 1974), aff'd 509 F.2d 1358 (1st Cir. 1975). A temporary order restraining warden abuses was issued on August 16, 1974. *Ben David v. Travisono*, No. 5280 (D.R.I., Aug. 16, 1974). A jury trial in October 1974 resulted in nominal and punitive damages awards to several prisoners. We affirmed the verdicts. *Morris v. Travisono*, 528 F.2d 856 (1st Cir. 1976).

In October 1975, the Morris Rules were once again suspended. The court declined to accede to defendants' request that it approve the suspension. Instead, it appointed an expert witness to investigate prison conditions and report directly to the court. The expert's expenses were to be paid by defendants. Because defendants submitted a plan for restoration of the rules and withdrew the indefinite suspension motion, the expert was not needed. The opinion issued by the court on December 12, 1975 delineated the factual foundation for the jury verdict in the 1974 *Morris-Ben David* trial; permanently enjoined certain warden conduct; and deferred decision on plaintiffs' request for an ombudsman to oversee prison conditions pending the report of the court-appointed expert. Because the expert did not serve, no report was forthcoming. *Ben David v. Travisono*, No. 5280 (D.R.I., Dec. 12, 1975). What was termed a "final judgment" and order for the combined *Morris-Ben David* actions was entered

on April 5, 1976, expressly incorporating the terms of the December 12, 1975 opinion. This judgment and order resolved finally all the substantive issues raised in that litigation, except it left open the plaintiffs' request for the appointment of an ombudsman, which was "conditionally denied without prejudice." *See* Fed.R.Civ.P. 54(b) (authorizing district courts to direct the entry of final judgment on fewer than all claims presented). The court retained jurisdiction "for a period of six (6) months from the entry of final judgment" and indicated that at the expiration of that period it would "review and reconsider de novo plaintiffs' [ombudsman] request . . . ."

On April 12, 1976 plaintiffs, noting that the April 5th judgment had stated the court's intention to retain jurisdiction, moved "that the court extend the time within which [plaintiffs] must file for costs and fees to and including ten (10) days from and after the entry of an order which finally disposes of all issues raised by this litigation." This motion was granted by a Magistrate on May 11, 1976.

More than one year later, on June 10, 1977, the district court entered in the combined *Morris-Ben David* actions yet another so-called final judgment in which it denied plaintiffs' ombudsman request "without prejudice" to their seeking similar relief in other proceedings "including but not limited to *Palmigiano v. Garrahy* [443 F.Supp. 956]," a separate prison case then pending before the court.

Following the entry of this second so-called final judgment in *Morris-Ben David*, and during the course of the ongoing, separate *Palmigiano v. Garrahy* proceedings, the *Morris-Ben David* lawyers requested and received, on numerous occasions, extensions of time for the filing of a fee award application in that consolidated case. In June 1978 final judgment was entered in *Palmigiano*, and shortly thereafter, on July 13, 1978 the *Morris-Ben David* attorneys at long last moved for an award of fees and

costs. Because no request for fees had ever been made in the original *Morris* litigation, the attorneys limited their requests for compensation to work performed after the commencement of *Ben David* on June 25, 1973. The complaint in the latter case apparently had included a fees request.

The court denied defendants' motion for an evidentiary hearing on the question of fees, but ordered the parties to brief the issue whether there were special circumstances which would render an award of fees unjust. The court, after considering the parties' submissions, determined that, technically, the Fees Act took effect[1] in time to encompass *Ben David*, but concluded, as a matter of discretion, that an award of fees for services in that case would be inappropriate. The court reasoned that the linkage of the major thrust of that litigation with any remaining action on the ombudsman issue, the only substantive issue pending on the effective date of the Fees Act, was so attenuated as to constitute a "special circumstance" which would render an award unjust. In addition, the court appears to have been influenced by its own award, on the same day, of substantial fees ($115,483.75) to the attorneys who performed services in *Palmigiano*. Following this denial of a fee award the court granted plaintiffs' motion for reconsideration, but after holding an evidentiary hearing, again denied relief. *Ben David v. Travisono*, No. 5280 (D.R.I., Nov. 5, 1979). This appeal ensued.

### Discussion

As the legislative history of the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988, makes clear, that Act was "intended to apply to all [civil rights] cases pending on the date of enactment as well as all future cases." H.R.Rep. No. 94–1558, 94th Cong., 2d Sess. 4 n. 6 (1976), *quoted in Stanford Daily v. Zurcher*, 550 F.2d 464 (9th Cir. 1977). In keeping with this legislative mandate, we have held that although a

---

1. The effective date of the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988, is October 19, 1976.

district court's disposition of a particular case predates the enactment of the Fees Act, the Act will nonetheless govern the allowance of fees for services rendered throughout the litigation where the case was pending on appeal on that critical date. *Martinez Rodriguez v. Jimenez*, 551 F.2d 877 (1st Cir. 1977); *King v. Greenblatt*, 560 F.2d 1024, 1025–26 n. 2 (1st Cir. 1977). This is so despite the fact that the only issue raised on appeal concerns the propriety of the district court's award of fees made pursuant to standards developed prior to passage of the Act. *Martinez Rodriguez, supra*. Thus, the Fees Act is plainly applicable to attorneys' services rendered in the present litigation provided that litigation was still "pending" on October 19, 1976, the effective date of the Act.

■ Here, a so-called final judgment resolving all but one of the substantive issues raised in the litigation was entered on April 5, 1976, over six months before the operative date of the Fees Act. However, the one issue remained open and unresolved until June 10, 1977, at which time the court entered its second final judgment and order; this did not occur until well after the crucial effective date of the Act. More importantly, both during the pendency of this remaining issue and afterwards, the general question of attorneys' fees was expressly reserved by the court, as indicated in its allowance of various motions and acceptance of stipulations filed by the parties providing for the extension of the time period available for the application for such fees. A fees request was ultimately made on July 13, 1978. In these circumstances we agree with the district court that, for purposes of applicability of the Fees Act, the consolidated *Ben David-Morris* case was still "pending" on the Act's effective date, and that the Fees Act must, therefore, control plaintiffs' request for attorneys' fees for services throughout the litigation.[2] *Cf. Martinez Rodriguez, supra; King v. Greenblatt, supra*. Where we differ with the district court is in its conclusion that, despite the Fees Act's general applicability, the cited "special circumstances" rendered an award unjust.

The district court, in refusing to award fees, focused upon the fact that the only substantive issue remaining for decision on the effective date of the Act was the request for an ombudsman, which was later denied without prejudice to the plaintiffs' ability to renew that request in the still pending *Palmigiano* litigation. The court concluded that the viability of only such a minor remaining issue on the Act's effective date was not "sufficient justification for granting a fee award under the Act." The court further noted that "while the confluence of the *Ben David* and *Morris* cases with *Palmigiano* makes those cases pending and subject to consideration under the Act, the Court, in the exercise of the discretion specifically granted to it by the statute, views that confluence as a special circumstance which would make an award of fees in *Ben David* and *Morris* unjust."

2. It is true that in its final judgment of April 5, 1976, the court expressly directed entry of judgment as to all claims but the plaintiffs' ombudsman request. Under Fed.R.Civ.P. 54(b), this direction had the effect of concluding those claims, which constituted virtually the whole case; and had no timely action then been taken to preserve the issue of attorneys' fees relative to those claims, it could be argued that the fees issue was thereupon terminated, and thus effectively removed from the purview of the subsequently enacted Fees Act. We need not, however, consider whether by itself the entry of partial judgment as to all except the ombudsman claim before the Act's effective date would have foreclosed an award of fees relative to those matters. Apparently recognizing the problem, plaintiffs on April 12, 1976 moved the court to defer consideration of their attorneys' fee request until all issues then before the court were concluded; and this motion was allowed. The fact that the issue of fees, first raised in plaintiffs' complaint, was thus specifically reserved by the court within ten days after the entry of the partial judgment, *see* Fed.R.Civ.P. 59(e); *compare* Fed.R.Civ.P. 54(d), Rule 25(c) of the Local Court Rules for the District Court for the District of Rhode Island, makes it clear that the matter of fees was not merged into that judgment and, together with the ombudsman issue, remained open and pending up to and beyond the effective date of the Fees Act. *Cf. Fase v. Seafarers Welfare and Pension Plan*, 589 F.2d 112, 114 n. 3 and cases cited (2d Cir. 1978).

**468**

(Citations and footnotes omitted). We feel the court's focus here was misplaced.

 While it is true that the district court has "broad discretion" to make an initial determination of the entitlement of a prevailing plaintiff to attorneys' fees under the Act, *see Sargeant v. Sharp*, 579 F.2d 645, 647 (1st Cir. 1978), that discretion is limited by the fact that "a successful plaintiff 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Id.* at 647 (*quoting Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968)). *See also* the legislative history of the Act, *Senate Report* at 4; [1976] *U.S.Code Cong. & Admin.News*, pp. 5908, 5909, 5912; *House Judiciary Committee Report*, H.Rep. No. 94–1558, 94th Cong., 2d Sess. 6 (1976) (*Newman* standard given explicit legislative approval). In basing its denial of a fee award on the circumstance that only a so-called "minor" issue remained for decision on the effective date of the Act, the district court blended the technical threshold question of the Act's applicability with the substantive question of the merits of plaintiffs' request for fees itself. This approach was improper. The fact that the pendency of a "slight" or "trivial" issue on the effective date of the Act made the Act initially applicable could not at the same time provide a basis for a finding of "special circumstance" rendering plaintiffs undeserving of a fees award. Having concluded that the threshold hurdle of applicability was met here, the district court was bound to consider plaintiffs' entitlement to a fee award by focusing on the attorneys' work in the proceeding as a whole and applying appropriate standards thereto. In other words, once the door to the Fees Act was opened, a full inquiry as to plaintiffs' entitlement to an award of attorneys' fees was in order. It is of no moment that the services in question were rendered almost entirely prior to the effective date of the Act.

 Nor do we agree with the district court that the mere "confluence of the *Ben David* and *Morris* cases with *Palmigiano*"

would render an award unjust. From what we know of the Rhode Island prison litigation, *Ben David* and *Morris* seem to have formed a necessary foundation for the results achieved in *Palmigiano*. Moreover, the same attorneys were not involved. We said in *Nadeau v. Helgemoe* that "the mere existence of other similar suits by other plaintiffs should not automatically be considered a basis for diminishing a plaintiff's award." 581 F.2d 275, 281 (1st Cir. 1978).

Since the district court has made it clear that it denied an award of fees on what we have found to be basically irrelevant factors, we remand this case to that court so that it can determine the amount of fees to be awarded.

*Reversed and remanded.*