**Myrna UNDERWOOD, et al., Plaintiffs,**

v.

**Samuel R. PIERCE, et al., Defendants.**

**No. 79–1318–HP.**

United States District Court,
C. D. California.

March 25, 1982.

Patricia Tenoso Sturdevant, Mary S. Burdick, Western Center of Law and Poverty, Inc., Los Angeles, Cal., for plaintiffs.

J. Paul McGrath, Asst. Atty. Gen., Washington, D. C., Andrea Sheridan Ordin, U. S. Atty., Los Angeles, Cal., Stephen D. Peterson, Asst. U. S. Atty., Sheila Lieber, June Rose Carbone, Raphael O. Gomez, Civil Division, Dept. of Justice, Washington, D. C., for defendants; Stephen M. Goldstein, Dept. of Housing and Urban Development, Washington, D. C., of counsel.

MEMORANDUM AND ORDER GRANTING WESTERN CENTER ON LAW AND POVERTY'S MOTION FOR DETERMINATION OF ENTITLEMENT TO AN AWARD OF ATTORNEYS' FEES

PREGERSON, Circuit Judge, Sitting by Designation.

This court has been asked to determine whether Western Center on Law and Poverty, Inc. (Western Center) is entitled to attorneys' fees in this litigation for work performed in representing a class of low-income tenants who resided in certain federally subsidized housing projects.

Western Center, a public-interest law firm that acts as an advocate on behalf of low-income persons, contends that it is entitled to an award of fees under both the common fund/common benefit doctrine and the Equal Access to Justice Act of 1980, 28 U.S.C. § 2412. Counsel for defendant, Samuel R. Pierce, Secretary of Housing and Urban Development (HUD), denies the applicability of either ground for entitlement to fees.

The court concludes that the common fund/common benefit doctrine is inapplicable, that the Equal Access to Justice Act applies, and that Western Center is entitled to an award of fees under that act.

BACKGROUND

In 1974 Congress passed section 236 of the Housing and Community Development Act. 12 U.S.C. § 1715z–1(f)(3) and (g). That legislation created a reserve fund to subsidize low-income tenants of certain federally assisted housing projects so that they would not bear the full burden of rising tax and utility costs. HUD, charged with implementing the tax and utility subsidy program, refused to do so. As a result, numerous lawsuits, including the instant *Underwood* litigation, were filed in district courts throughout the country.[1] Eventually, after

---

1. This court knows of at least seventeen cases filed to assert rights to the section 236 tax and subsidy program. *Ross v. Community Services, Inc.,* 396 F.Supp. 278 (D.Md.), *subsequent opinion,* 405 F.Supp. 831 (D.Md.1975), *aff'd mem.,* 544 F.2d 514 (4th Cir. 1976), *cert. grant-* ed *sub nom. Harris v. Ross,* 431 U.S. 928, 97 S.Ct. 2630, 53 L.Ed.2d 243 (1977), *remanded to district court for consideration of settlement* 439 U.S. 1001, 99 S.Ct. 607, 58 L.Ed.2d 675 (1978); *Abrams v. Hills,* 415 F.Supp. 550 (C.D. Cal.), aff'd, 547 F.2d 1062 (9th Cir. 1976), *cert.*

extended litigation, HUD and the plaintiff classes in eleven of the lawsuits entered into a settlement agreement, which the District Court of Connecticut approved on February 23, 1979.[2]

Under the settlement, HUD turned over a $60 million fund (representing the amount of money HUD should have paid to tenants under the subsidy program) to an escrow agent who, pursuant to the provisions of the agreement, invested the fund for the benefit of the class members. Eventually, checks were mailed for past due tax and utility subsidy payments to over 150,000 eligible low-income tenants who were located after a nationwide search that involved, among other things, distributing claim forms to 4,613 federally subsidized housing projects.[3]

Western Center was not only involved in the lengthy and complex litigation that led to the $60 million settlement, but also played an important and extensive role in the administration and distribution of the fund.

I. Common Fund/Common Benefit Doctrine

▇ Western Center asserts that it is entitled to attorneys' fees under the equitable common fund/common benefit doctrine. The Ninth Circuit, in *Southeast Legal Defense Group v. Adams,* 657 F.2d 1118 (9th Cir. 1981), outlined the prerequisites for an award of attorneys' fees under this rule:

> To qualify for an award under the equitable common fund or common benefit doctrine, the successful litigant must either impart a substantial nonmonetary benefit or create or preserve a common fund for an identifiable class of beneficiaries. *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); *Hall v. Cole,* 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). The litigant is then entitled to recover attorneys fees from the benefitted class. Without such benefit accruing to or being preserved for an identifiable class, the litigant alone must bear the cost for the enrichment which may flow to others. In *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the Supreme Court acknowledged the viability of this doctrine, but limited its application to only where the class of beneficiaries is sufficiently identifiable, the benefits can be accurately traced, and the fee can be "shifted with some exactitude to those benefitting." *Id.* at 265 n.39, 95 S.Ct. at 1625 n.39. *See also, Stevens v. Municipal Court,* 603 F.2d 111 (9th Cir. 1979).

657 F.2d at 1122–33.

Western Center contends that its role in successfully representing the plaintiff class

---

granted sub nom. *Harris v. Abrams,* 431 U.S. 928, 97 S.Ct. 2630, 53 L.Ed.2d 243, *remanded to district court for consideration of settlement,* 439 U.S. 1001, 99 S.Ct. 607, 58 L.Ed.2d 675 (1978); *Underwood v. Hills,* 414 F.Supp. 526 (D.D.C.1976), *stay granted sub nom. Harris v. Underwood,* 429 U.S. 892, 97 S.Ct. 250, 50 L.Ed.2d 175 (1976), *applic'n to vacate stay denied,* 434 U.S. 993, 98 S.Ct. 626, 54 L.Ed.2d 488 (1977); *Harrison v. Hills,* (W.D.Pa. C.A. No. 75–938, Oct. 1, 1975); *Carberry v. Hills,* (D.Mass. C.A. No. 76–521–F, March 8, 1976); *Parker Square Tenants Association v. HUD,* (W.D.Mo. C.A. No. 75C577–W–3, Jan. 27, 1976); *Gertsch v. Hills,* 414 F.Supp. 15 (D.Utah 1976); *Folsom Gardens Action Comm. v. Hills,* (E.D.Cal. C.A. No. S–76–43–TJM, Feb. 12, 1976); *Campbell v. HUD,* (N.D.Ohio C.A. No. C 75–471, Dec. 22, 1975); *Dubose v. Harris,* (D.Conn. Civ. No. H–75–303); *Walter v. Harris,* (D.Conn. Civ. No. H–75–345); *Little v. Harris,* (D.Conn. Civ. No. H–75–345, Feb. 23, 1979); *Pleasant v. Harris,* (D.Conn. Civ. No. H–75–346); *Morales v. Harris,* (D.Conn. Civ. No. H–76–44); *Adams v. Harris,* (D.Conn. Civ. No. H–76–89) *Grundman v. Harris,* (D.Conn. Civ. No. H–76–160); *Johnson v. Harris,* (D.Conn. Civ. No. N–76–109). The eight Connecticut suits were eventually consolidated. *Dubose v. Harris,* 82 F.R.D. 582, 583 n.1 (D.Conn.1979).

**2.** The eleven suits included the eight Connecticut suits referred to in note 1, *Underwood v. Hills, supra, Harris v. Ross, supra,* and *Harris v. Abrams, supra. See Dubose v. Harris, supra,* at 583 nn.1, 3. Eventually members of the plaintiff classes in all the lawsuits listed in note 1 were allowed to receive benefits from the settlement.

**3.** For a detailed discussion of the statutory scheme of the Housing and Community Development Act, the history of the litigation, and the settlement terms, *see Dubose v. Harris, supra.*

in the instant litigation satisfies these criteria and that the $60 million fund, plus earned interest, constitutes a "common fund" from which attorneys' fees may be paid. The settlement agreement, however, governs the distribution of the fund. That agreement explicitly provides that "[n]one of the funds distributed may be used to pay attorneys' fees." The term "funds distributed" is defined in paragraphs 2 and 3(f) of the agreement to include both principal and interest earned by the fund. There is, therefore, no *reachable* "common fund" from which an award of attorneys' fees may be made and the common fund/common benefit doctrine is inapplicable.

## II.  The Equal Access to Justice Act

The Equal Access to Justice Act furnishes an alternative ground for granting attorneys' fees. The act provides that

> a court shall award to a prevailing party . . . fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).  *See generally* Dods and Kennedy, *The Equal Access to Justice Act,* 50 UMKC L.Rev. 48 (1981). Congress passed this provision to improve citizen access to courts and administrative proceedings by lessening the deterrent effect of litigation expenses incurred by persons who challenge governmental action. H.R.Conf.Rep.No. 96–1434, 96th Cong., 2d

Sess. 21 (1980), *reprinted in* [1980] U.S.Code Cong. & Ad.News 5003, 5010.

Through a favorable settlement, Western Center's clients prevailed in a suit against the United States, thereby satisfying one of the prerequisites for an award under the Equal Access to Justice Act.[4]  HUD's counsel, however, challenges Western Center's request for attorneys' fees on four grounds.

First, HUD notes that the Equal Access to Justice Act explicitly applies to actions "pending on, or commenced on or after" October 1, 1981, Pub.L. 96–481, § 208, 94 Stat. 2330 (1980), 28 U.S.C. § 2412, and asserts that this case was not "pending" on the act's effective date.

■ No appellate courts have interpreted the word "pending" as employed in the Equal Access to Justice Act.[5]  The legislation is, however, analogous to the Civil Rights Attorney's Fees Awards Act of 1976, Pub.L.No.94–559, 90 Stat. 2641, amending 42 U.S.C. § 1988. Under that statute, litigation is considered pending even if the only unresolved issue is whether to award attorneys' fees.

In discussing the Civil Rights Attorney's Fees Award Act in *Rainey v. Jackson State College,* 551 F.2d 672 (5th Cir. 1977), the Fifth Circuit said:

> the Supreme Court's decision in *Bradley v. School Board of City of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1973), *strongly suggests that a case is still pending even if the only remaining issue is that of attorneys' fees.* In *Bradley,* the Court authorized an award of attorneys' fees to plaintiffs in a school

---

**4.** Western Center's clients should be considered "prevailing" even though they prevailed through a settlement instead of a court order.  Congress, in explaining that courts should interpret the phrase "prevailing party" consistently with the law that has developed under existing attorneys' fees statutes, specifically stated that under the Equal Access to Justice Act, "a party may be deemed prevailing if the party obtains a favorable settlement of his case, *Foster v. Boorstin,* 561 F.2d 340 (D.C. Cir.1979)."  H.R.Conf.Rep.No.96–1434, 96th Cong., 2d Sess. 22 (1980); *reprinted at* [1980] U.S.Code Cong. & Ad.News 5010.

**5.** The only reported case interpreting the meaning of "pending" as used in the Equal Access to Justice Act is *Berman v. Schweiker,* 531 F.Supp. 1149 (D.N.Ill.1982).  In *Berman,* plaintiff successfully challenged a Social Security Administration denial of his request for revision of his Social Security earnings records. The court entered final judgment on September 2, 1981.

Plaintiff moved for attorneys' fees under the Equal Access to Justice Act.  The court held that the action was still pending on the act's effective date of October 1, 1981, because the non-prevailing party's right to appeal had not expired or been exhausted.

desegregation case under § 718 of the Education Acts Amendments of 1972, 20 U.S.C. § 1617, even though (a) there were no pending or appealable orders in the case except for attorneys' fees and (b) § 718 had not been enacted until after initial submission of the case to the Court of Appeals. Although the Court in *Bradley* obviously did not consider the statute in the present case, the teachings of that case have direct applicability to the case at bar for two reasons. First, *Bradley* was not grounded on a specific consideration of § 718 but on the general principle that

> a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary.

416 U.S. at 711, 94 S.Ct. at 2016, 40 L.Ed.2d at 488. Second, several times in the legislative history of the Civil Rights Attorney's Fees Awards Act of 1976 *Bradley* was cited as a prototypical case for awarding attorneys' fees in pending cases. Neither the statute itself nor its legislative history gives any indication of a congressional intent not to have the Act apply to cases in which attorneys' fees is the only pending issue.

551 F.2d at 676 (emphasis added) (footnote omitted). *See also Hartmann v. Gaffney,* 446 F.Supp. 809 (D.Minn.1977).

■ In *Sethy v. Alameda City Water District,* 602 F.2d 894 (9th Cir. 1979), *cert. denied,* 444 U.S. 1046, 100 S.Ct. 734, 62 L.Ed.2d 731 (1980), the Ninth Circuit adopted a similar position. There, the court reversed a district court's ruling that attorneys' fees could not be awarded because the case was not "pending" when the Civil Rights Attorney's Fees Awards Act was passed. When the act was passed, the only matter pending was the issuance of the circuit court's mandate, pursuant to Fed.R.

App.P. 41(a), after an affirmance on appeal. Even though the Ninth Circuit had resolved all issues in an opinion filed before the act's effective date, the court held that the technical lack of finality due to the non-issuance of its mandate sufficed to keep the case "pending." *Id.* at 897. In the instant case more is pending than a technical stamp of finality. A number of substantial issues remain unresolved. These include disposition of the remainder of the settlement fund, disposition of the remaining interest earned by the fund, and determination of whether plaintiffs' counsel is entitled to attorneys' fees. HUD's counsel has failed to show why the teachings of *Bradley, Rainey,* and *Sethy* should not apply with equal force to the Equal Access to Justice Act.[6] Accordingly, this court concludes that this action is still pending for purposes of the act.

■ Second, HUD argues that Western Center is, at the very least, precluded from recovering fees for legal work done before October 1, 1981, the effective date of the act. This argument is unpersuasive. In *Bradley v. School Board of City of Richmond, supra,* the Supreme Court approved an award of attorneys' fees for work performed before the effective date of the Educational Acts Amendments of 1972, 20 U.S.C. § 1617, which provided for fees in connection with school desegregation cases. Again, in *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), the Court approved attorneys' fees awarded for work done before the effective date of the Civil Rights Attorney's Fees Awards Act. *See also Corpus v. Estelle,* 605 F.2d 175, 179 n.8 (5th Cir. 1979), *cert. denied,* 445 U.S. 919, 100 S.Ct. 1284, 63 L.Ed.2d 605 (1980); *David v. Travisono,* 621 F.2d 464 (1st Cir. 1980). Because the attorneys' fees statutes involved in those cases and the Equal Access to Justice Act address similar concerns, this court concludes that the rationale of *Brad-*

---

**6.** The Supreme Court has noted that statutes containing similar language and sharing a "common raison d'etre" should be interpreted "pari passu." *Northcross v. Board of Education of Memphis,* 412 U.S. 427, 428, 93 S.Ct. 2201, 2202, 37 L.Ed.2d 48 (1973). That princi-

ple applies here, as the attorneys' fee provisions at issue in *Bradley, Rainey,* and *Sethy* and the Equal Access to Justice Act share the common purpose of encouraging certain aggrieved individuals to seek redress in the courts.

*ley, Hutto, Corpus,* and *David* applies here and that Western Center, if eligible to receive fees, is entitled to be compensated for all work done on the instant litigation.[7]

Third, counsel for HUD contends that Western Center is not entitled to fees because HUD was "substantially justified" in its defense of this action. Appellate courts have not yet interpreted the phrase "substantially justified" as used in the Equal Access to Justice Act.[8] Congress, however, has suggested a specific criteria for lack of "substantial justification."

Certain types of case dispositions may indicate that the Government action was not substantially justified. A court should look closely at cases, for example, where there has been a judgment on the pleadings or where there is a directed verdict, where a prior suit on the same claim had been dismissed or where there is a substantial difference between the amount or content of the Government's original pleadings and the settlement agreed to. Such cases clearly raise the possibility that the Government was not substantially justified in pursuing the litigation.

H.R.Conf.Rep.No.96–1434, 96th Cong., 2d Sess. 9–22 (1980); *reprinted at* [1980] U.S. Code Cong. & Ad.News 5011.

Western Center points out that when *Underwood* was filed, all nine courts that addressed the question had already made preliminary or final rulings that HUD could not refuse to distribute the money in the reserve fund earmarked for tax and utility subsidy payments. *Underwood v. Hills,* 414 F.Supp. 526, 528 (D.D.C.), *stay granted sub nom. Harris v. Underwood,* 429 U.S. 892, 97 S.Ct. 250, 50 L.Ed.2d 175 (1976), *applic'n to vacate stay denied,* 434 U.S. 993, 98 S.Ct. 626, 54 L.Ed.2d 488 (1977). In the face of these adverse decisions, HUD apparently took the position that it would pay the subsidies to low-income tenants only under specific court orders. The district judge handling the liability issues in the instant case[9] entered a permanent injunction even

**7.** HUD also contends that the clear waiver of sovereign immunity in the Equal Access to Justice Act does not waive immunity for work performed before the act's effective date.

This argument is unpersuasive. The Equal Access to Justice Act unequivocally waives sovereign immunity for "pending" cases. Courts have interpreted attorneys' fees provisions that apply to pending cases to allow fees for work performed before an act's effective date, *see Bradley, supra; Hutto, supra; Corpus, supra; David, supra,* and Congress is presumed to be familiar with pertinent case law. *See, e.g., United States v. Smith,* 521 F.2d 957, 968 n.24 (D.C.Cir.1975); *Kansas City, Mo. v. Fed. Pac. Elec. Co.,* 310 F.2d 271, 275 (8th Cir.), *cert. denied,* 371 U.S. 912, 83 S.Ct. 257, 9 L.Ed.2d 171 (1962), 373 U.S. 914 (1963); *Department of Water & Power v. Allis-Chalmers Mfg. Co.,* 213 F.Supp. 341, 345 (C.D.Cal.1963). *Cf. Shapiro v. U.S.,* 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948) (Congress, in re-enacting a statute, is presumed to adopt previous judicial construction of the statute.) Further, as noted *supra,* statutes containing similar language and sharing a "common raison d'etre" should be interpreted "pari passu." *Northcross, supra.* Thus, by applying the Equal Access to Justice Act to pending cases, Congress waived the sovereign immunity bar for work performed on those pending cases before the act's effective date.

*Photo Data, Inc. v. Sawyer,* 533 F.Supp. 348 (D.D.C.1982), reached the same conclusion.

There, the court concluded that the Equal Access to Justice Act's provision for recovery of attorneys' fees in actions pending on its effective date authorizes fee awards for services rendered before the Act's effective date.

**8.** The only reported case interpreting the meaning of "substantial justification" as used in the Equal Access to Justice Act is *Alspach v. District Director of Internal Revenue,* 527 F.Supp. 225 (D.Md.1981). In *Alspach* a taxpayer filed an action to enjoin the IRS from collecting an assessment on the ground that the IRS had failed to comply with the statutory notice requirement. The IRS answered the complaint before its trial counsel received and reviewed the file. After reviewing the file, trial counsel advised the taxpayer's attorney that the government would concede the case.

Plaintiff moved for attorneys' fees under the Equal Access to Justice Act. The court found that the government was reasonable in its initial opposition and subsequent concession and denied the attorneys' fees request. *Alspach* is readily distinguishable from the instant case where the government persisted in its position despite numerous court opinions to the contrary.

**9.** *Underwood v. Harris,* the instant case, was originally brought in the District Court for the District of Columbia. The district court consolidated plaintiffs' motion for preliminary injunc-

though plaintiffs had asked only for preliminary relief. While the mere fact of an adverse ruling does not raise a presumption that the government's position was not substantially justified,[10] the facts of the instant case "clearly raise the possibility that the Government was unreasonable in pursuing the litigation."

In rebuttal, HUD's counsel insists that the Supreme Court's grant of certiorari in two related cases, *Ross v. Community Services, Inc.,* 396 F.Supp. 278 (D.Md.), *subsequent opinion,* 405 F.Supp. 831 (D.Md. 1975), *aff'd mem.,* 544 F.2d 514 (4th Cir. 1976), *cert. granted sub nom. Harris v. Ross,* 431 U.S. 928, 97 S.Ct. 2630, 53 L.Ed.2d 243 (1977), *remanded to the district court for consideration of settlement,* 439 U.S. 1001, 99 S.Ct. 607, 58 L.Ed.2d 675 (1978); *Abrams v. Hills,* 415 F.Supp. 550 (C.D.Cal.), *aff'd,* 547 F.2d 1062 (9th Cir. 1976), *cert. granted sub nom. Harris v. Abrams,* 431 U.S. 928, 97 S.Ct. 2630, 53 L.Ed.2d 243 (1977), *remanded to district court for consideration of settlement,* 439 U.S. 1001, 99 S.Ct. 607, 58 L.Ed.2d 675 (1978), demonstrates that HUD's position was substantially justified.[11] While the Court might have granted the writ to set aside the numerous decisions rejecting HUD's position, it could have decided to take up the case to resolve the issues against HUD once and for all, thereby rejecting HUD's position which forced

low-income tenants to bring class actions in district courts throughout the country. Furthermore, HUD eventually settled the class action cases essentially on the plaintiffs' terms. Such a settlement probably would not have materialized had HUD been confident that the Court would uphold its position. HUD, therefore, has failed to meet its burden of proving that its position was substantially justified.[12]

Finally counsel for HUD argues that this case presents a special circumstance that should make an award of fees unjust. HUD argues that because the settlement agreement provides that attorneys' fees are unavailable, an award of fees under the Equal Access to Justice Act would simply be unjust.

This argument is unconvincing. HUD misreads the agreement. It does not state that plaintiffs' counsel is precluded from receiving attorneys' fees from the United States. The agreement merely precludes an award of fees from the settlement fund established to benefit certain low-income tenants.

*Aho v. Clark,* 608 F.2d 365 (9th Cir. 1979), which neither party cited, does not require a finding that the instant case presents special circumstances rendering an award of fees unjust.[13] In *Aho* plaintiffs success-

---

tion with trial on the merits and entered summary judgment for the plaintiffs. The Supreme Court stayed the decision pending disposition of two related cases, *Harris v. Ross, supra; Harris v. Abrams, supra.* Before the Court ruled on the related cases, plaintiffs in eleven pending suits settled with HUD. *See supra* note 2. The District Court for the District of Connecticut, where eight of the cases were originally brought, approved the overall settlement. *Dubose v. Harris, supra.* This case was then transferred to the Central District of California, where Western Center is located, for administration of the settlement fund.

10. *See* H.R.Conf.Rep.No.96–1418, 96th Cong., 2d Sess. 10–11 (1980), *reprinted at* [1980] U.S. Code Cong. & Ad.News 4989–90.

11. HUD's counsel also contends that HUD's position was substantially justified because this is a case of first impression. That may have been true of the first case filed, but by the time *Underwood* was decided, nine courts had al-

ready entered preliminary or final judgments, holding that HUD had no discretion to refuse to expend money in the reserve fund for tax and utility subsidies. *Underwood v. Hills, supra,* 414 F.Supp. at 531.

12. The government has the burden of demonstrating sufficient justification for its position. H.R.Conf.Rep.No.96–1434, *supra* at 22, reprinted at [1980] U.S.Code Cong. & Ad.News 5011. *See also Alspach v. District Director of Internal Revenue, supra.*

13. "Special circumstances" which render an attorneys' fees award unjust provide a basis for denying fees under other attorneys' fees statutes. *See* E. R. Larson, *Federal Court Awards of Attorney's Fees* 44–51 (1981). Courts, however, have rarely denied fees due to special circumstances. *Id.* Other than *Aho v. Clark, supra,* this court has uncovered only one circuit court decision upholding a ruling that special circumstances justified denial of fees to a prevailing plaintiff.

fully challenged the adequacy of the Hawaii Board of Education's school breakfast program under the Child Nutrition Act, 42 U.S.C. § 1773. The request for fees was predicated on the Civil Rights Attorney's Fees Awards Act. This act provides that in civil rights suits the "court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." In holding that the district court did not abuse its discretion by denying fees, the Ninth Circuit pointed to a number of special circumstances which would have rendered an award unjust. First, the consent agreement, which expanded the school breakfast program in Hawaii's public schools, made no provision for such an award even though plaintiffs asked for attorneys' fees in their complaint. The court, therefore, determined that an award of fees would alter the bargain struck by the parties and thus would be manifestly unfair to defendant. The court also noted that though the act was not in effect when suit commenced, it was in effect when a compromise was reached, so presumably the parties negotiated their settlement knowing that the new provision was operative.

Moreover, in concluding that the district court did not abuse its discretion by denying a fee award, the court of appeals noted that defendants were in the process of establishing a breakfast program when suit was filed; thus, the court was unable to conclude that litigation was needed to bring an existing program within federal standards, or that defendants manifested bad faith or obdurate conduct.

In contrast, when the *Underwood* suit was filed, HUD was not in the process of complying with Congressional directives to institute a tax and utility subsidy program for low-income tenants. The *Underwood* litigation and related suits were apparently needed to bring the subsidy program within federal requirements, a result resisted by HUD with some display of obdurate conduct.

It is also important to bear in mind that the Equal Access to Justice Act was not on the books when the parties signed the settlement agreement in *Underwood*. When the settlement was negotiated the common fund/common benefit doctrine provided the only realistic basis for a fee award, which plaintiffs' counsel agreed to forego since that could have reduced the amounts paid to low-income class members. Accordingly, one cannot say that an award of fees paid by the United States would alter the bargain struck by the parties and result in manifest unfairness to the government. After all, Congress passed the Equal Access to Justice Act and explicitly made it applicable to litigation pending on the act's effective date. Presumably then, the government knew that the act could require it to pay fees in pending lawsuits including complex cases whose settlement agreements were being administered under court supervision, as is true of the *Underwood* litigation.

CONCLUSION

▮ The above discussion demonstrates that Western Center is entitled to an award of attorneys' fees. Western Center represented the prevailing party in a civil action brought against an agency of the United States. The action was pending on the effective date of the Equal Access to Justice Act. Under that act, the government has the burden of proving that its position was substantially justified or that special circumstances would make an award of at-

---

In *Chastang v. Flynn & Emrich Co.,* 541 F.2d 1040 (4th Cir. 1976), a case involving the validity under the Civil Rights Act of 1964 of a retirement plan established in 1942, plaintiffs successfully claimed that the plan illegally discriminated against males. The district court refused to award attorney's fees under 42 U.S.C. 2000–5(k). Such an award, although discretionary, is ordinarily made in Title VII actions absent special circumstances rendering an award unjust. On appeal, the Fourth Circuit concluded that special circumstances existed and that the district court had not abused its discretion. Those special circumstances included the reasonable dispatch displayed by the employer in correcting the discrimination as soon as murky areas of the law were clarified and the court's inability to conclude that plaintiffs' lawsuits were a contributing factor to the vindication of the plaintiffs' rights. Neither of those factors are present in the *Underwood* litigation.

torneys' fees unjust. Moreover, the act requires the court to award fees unless one of these two preclusive conditions are met. HUD has not shown that either condition exists here. Accordingly, Western Center's motion for an order of entitlement for attorneys' fees pursuant to the Equal Access to Justice Act is granted.