**Myrna UNDERWOOD, Sheila Fazande, Annie Johnson, Jerome Smith, Cora Ewers, Frances Jardin, Lura R. Stentz, Charlotte West, Aritisha McGee, individually and on behalf of all others similarly situated, Plaintiffs-Appellees,**

**v.**

**Samuel R. PIERCE, Jr., Secretary of Housing and Urban Development, Defendant-Appellant.**

**No. 83–5773.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 8, 1983.

Decided May 23, 1985.

Mary S. Burdick, Western Center of Law and Poverty, Inc., Los Angeles, Cal., for plaintiffs-appellees.

James R. Madison, Orrick, Herrington & Sutcliffe, San Francisco, Cal., amicus curiae.

Sheila Lieber, Robert Greenspan, Merril Hirsh, Attys., U.S. Dept. of Justice, Washington, D.C., for defendant-appellant.

Before HUG and FLETCHER, Circuit Judges, and CARROLL,* District Judge.

PER CURIAM:

This case requires us to consider the calculation of awards of attorneys' fees under the Equal Access to Justice Act. The Secretary of Housing and Urban Development was ordered to pay $1,129,450 to the attorneys representing low income tenants in a class action against the Secretary. The fee award calculation included time for services performed in litigating the case and time spent by the attorneys in administering a settlement agreement.

We hold that the plaintiff class is entitled to a fee award for its attorneys' litigation and settlement administration services. We also hold that ordering payment of fees at a rate in excess of $75 per hour was not an abuse of discretion on these facts. Finally, we hold that Congress did not intend to authorize the use of a multiplier to com-

---

* The Honorable Earl H. Carroll, United States District Judge for the District of Arizona, sitting by designation.

pound awards granted under the Equal Access to Justice Act.

## I

### FACTS

This action was brought by tenants of government-subsidized housing to challenge the refusal of the Secretary of Housing and Urban Development to implement a subsidy program authorized by the National Housing Act, 12 U.S.C. § 1715z–1 (1982). The Act authorized the Secretary to make payments to owners of government-subsidized apartment houses to cover increased costs for utilities and local taxes. The purpose of the payments was to prevent the shifting of those costs to low income tenants through rent increases. As provided by 12 U.S.C. § 1715z–1(g), the Secretary had accumulated a rental reserve fund to finance the operating subsidies. However, he had refused to distribute that fund.

Underwood brought this action in the District of Columbia as a class action on behalf of all persons nationwide who reside or had resided in apartments subsidized under 12 U.S.C. § 1715z–1. That district court granted a summary judgment for the class and entered a permanent injunction and writ of mandamus requiring the Secretary to disburse the operating subsidy fund. *See Underwood v. Hills*, 414 F.Supp. 526, 532 (D.D.C.1976), *aff'd, Hills v. Underwood*, 429 U.S. 892, 97 S.Ct. 250, 50 L.Ed.2d 175 (1976).

The Supreme Court granted a stay of mandate. It also granted certiorari in two cases raising identical claims, *Ross v. Community Services, Inc.*, 544 F.2d 514 (4th Cir.1976), *cert. granted sub nom., Harris v. Ross*, 431 U.S. 928, 97 S.Ct. 2630, 53 L.Ed.2d 243 (1977), *remanded for consideration of settlement*, 439 U.S. 1001, 99 S.Ct. 607, 58 L.Ed.2d 675 (1978), and *Abrams v. Hill*, 547 F.2d 1062 (9th Cir. 1976), *cert. granted sub nom., Harris v. Abrams*, 431 U.S. 928, 97 S.Ct. 2630, 53 L.Ed.2d 243 (1977), *remanded for consideration of settlement*, 439 U.S. 1001, 99 S.Ct. 607, 58 L.Ed.2d 675 (1978). Prior to hearing before the Court, the parties in *Ross, Abrams*, and the instant case entered into a settlement agreement. It was agreed that the Secretary would deposit $60 million with an escrow agent to create a settlement fund. The fund was to be distributed to owners of housing subsidized under the Act or directly to tenants in those projects where rents had been increased because no operating subsidy had been received. Price Waterhouse & Co. in Los Angeles contracted to distribute the fund, and Underwood's counsel was designated lead counsel for the settlement administration. Because these appointments focused the settlement activities in Los Angeles, the District of Columbia court transferred the case to the Central District of California.

After execution of the settlement agreement had begun under the district court's supervision, Congress enacted the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 (1982). Underwood sought an award under EAJA to compensate her attorneys for time spent in litigating the initial action and in supervising the distribution of the settlement fund. The district court concluded that Underwood was entitled to fees under EAJA as the prevailing party in an action brought against the United States. The court determined that Underwood's attorneys had provided 3,304 hours of service and applied an hourly rate ranging from $80 to $120, based on the prevailing market rates in the year the service was performed and the individual attorney's expertise. This resulted in a lodestar figure of $322,700, to which a multiplier of three-and-one-half was applied. The resulting award to Underwood was $1,129,450.

On appeal, the Secretary challenges both Underwood's entitlement to an award and the district court's calculation of the award. We are required to determine the following issues: (1) Did the settlement agreement preclude a fee award? (2) Was the Secretary's position substantially justified? (3) Do special circumstances make the award unjust? (4) Did the district court err in

calculating the award? (5) Did Congress intend that a multiplier be applied to awards granted under EAJA?

## II

## EFFECT OF SETTLEMENT AGREEMENT

The Secretary claims that in entering into the settlement agreement, Underwood waived all claims for fees and is therefore barred from asserting a statutory claim. He relies on three provisions of the agreement:

(1) Section 3, which governs distribution of the fund, provides in subsection (f): "None of the sums distributed may be used to pay attorney's fees";

(2) Subsection 3(e) provides for the return to the Secretary of "any money which remains after all claims are paid"; and

(3) Section 4 of the agreement, which governs the mechanics of distribution, assigns certain costs of administration to HUD in subsection (d). It concludes that "distribution of the settlement fund shall involve no other substantial costs or expenditures by HUD."

The Secretary contends these three provisions, read together, demonstrate a clear intent to draw no attorneys' fees from the settlement fund. Because the fund was the only possible source of fees when the agreement was signed, he reads the agreement as Underwood's promise to relinquish all claims to fees.

The district court interpreted the agreement as precluding the payment of fees from the settlement fund. *Underwood v. Pierce,* 547 F.Supp. 256, 262 (C.D.Cal.1982). It determined that Underwood's attorneys intended to waive such fees because "[w]hen the settlement was negotiated the common fund/common benefit doctrine provided the only realistic basis for a fee award, which plaintiffs' counsel agreed to forego since that could have reduced the amounts paid to low-income class members." *Id.* at 263. The court found, however, that the parties had no intent to pre-

clude the possibility of a recovery of fees under EAJA. *Id.*

■ The district court's interpretation of the settlement agreement presents a question of law subject to *de novo* review. *In re U.S. Financial Securities Litigation,* 729 F.2d 628, 631–32 (9th Cir.1984).

■ The first two settlement agreement terms on which the Secretary relies—sections 3(e) and 3(f) of the agreement—do not support his contention. Those sections merely indicate that no fees may be paid from the settlement fund itself. The two provisions are thus entirely consistent with the district court's findings that Underwood's attorneys had no intention of depleting the fund, but that the parties did not foreclose an award from sources outside the fund.

Nor does section 4(d) of the agreement in any way preclude an award of attorneys' fees. Attorneys' fees were dealt with exclusively in section 3(f) of the agreement. Reading the agreement as a whole, it is plain that section 4(d) was not intended to address the question of the availability of attorneys' fees at all, but was rather concerned with miscellaneous "housekeeping" expenses. We therefore conclude that the Secretary has failed to establish that the parties intended to waive all attorneys' fees attendant to the administration of the settlement agreement.

We agree with the district court that the agreement does not foreclose recovery under EAJA for legal expenses for litigation and settlement administration.

## III

## SUBSTANTIAL JUSTIFICATION

■ Section 2412(d)(1)(A) requires the district court to award fees unless it finds the position of the United States was substantially justified. To evaluate the government's position, we consider the totality of the circumstances present prior to and during litigation. *Timms v. United States,* 742 F.2d 489, 492 (9th Cir.1984); *Rawlings v. Heckler,* 725 F.2d 1192, 1196

(9th Cir.1984). The government must demonstrate that its position had a reasonable basis both in law and in fact. *Timms*, 742 F.2d at 492; *Wolverton v. Heckler*, 726 F.2d 580, 583 (9th Cir.1984). We review, for an abuse of discretion, the district court's determination that the government's position was not substantially justified. *United States v. First National Bank of Circle*, 732 F.2d 1444, 1446 (9th Cir.1984); *Rawlings*, 725 F.2d at 1196.

■ The district court found that the Secretary's position was not substantially justified because tenants of subsidized housing had brought numerous previous actions to require disbursement of the operating subsidy funds and in each the district court had held that payment of the subsidies was mandatory under 12 U.S.C. § 1715z–1. 547 F.Supp. at 257 & n. 1. We agree that these prior adverse decisions are relevant to the substantial justification question. *See Save Our Ecosystems v. Clark*, 747 F.2d 1240, 1250–51 (9th Cir. 1984); *Southern Oregon Citizens Against Toxic Sprays, Inc. v. Clark*, 720 F.2d 1475, 1481 (9th Cir.1983), *cert. denied*, —— U.S. ——, 105 S.Ct. 446, 83 L.Ed.2d 372 (1984); *Hoang Ha v. Schweiker*, 707 F.2d 1104, 1106 (9th Cir.1983). We are not persuaded by the Secretary's contention that the earlier rulings were only "non-final district court decisions" that mandated no change in his policies. Numerous courts in different districts had agreed with the tenants' contentions. The Secretary was thus put on clear notice that his position was without legal basis, but he continued to litigate the issue.

The Secretary also suggests that the Supreme Court, by granting a stay in this case and certiorari in two related cases, virtually certified that his position was substantially justified. We are reluctant to speculate as to the Court's intent in issuing those orders. We observe, however, that they are susceptible to interpretations other than those advanced by the Secretary. First, if the cases are considered in historical perspective, the Court may have granted certiorari to consider the broad question of the executive's power to impound funds, rather than the narrow issue of the meaning of 12 U.S.C. § 1715z–1. Second, the Court may have acted in sympathy with the low-income tenants who were forced to bring numerous successive actions to enforce their rights under section 1715z–1. *See Underwood v. Pierce*, 547 F.Supp. at 262. We also note that the Secretary's insistence that the Court's orders justified his position is undermined by the fact that, following entry of those orders, he entered into a settlement granting the plaintiffs all the relief they had requested. *See Dubose*, 579 F.Supp. 937 at 951 (1984).

More significantly, the decision of the District of Columbia court on the merits of this matter establishes that the Secretary had no reasonable basis in law to ignore the mandates of section 1715z–1. *See Underwood v. Hills*, 414 F.Supp. at 531; *see also Dubose*, 579 F.Supp. at 950 (Secretary's position in refusing to disburse operating subsidies "unreasonable" and "had no justifiable basis.")

We hold that the district court did not abuse its discretion in finding that the Secretary's position was not substantially justified.

## IV

## SPECIAL CIRCUMSTANCES

■ EAJA directs the district court to deny fees if "special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). This provision allows the government to defeat a fee application even if its position is not substantially justified. *See Berman v. Schweiker*, 713 F.2d 1290, 1295 n. 18 (7th Cir.1983). The Secretary argues such special circumstances exist in this case because the parties did not contemplate a fee award when the settlement was negotiated. He contends that imposing an award after the fact constitutes an "extraordinary injustice."

The Secretary bases his argument on *Aho v. Clark*, 608 F.2d 365 (9th Cir.1979). In *Aho*, the district court denied a request for an award of attorneys' fees under 42

U.S.C. § 1988 (1982). The fee request had been filed following the entry of a consent decree. In determining that the denial was not an abuse of discretion, we relied upon the fact that the consent agreement made no reference to attorneys' fees even though section 1988 had been enacted prior to the parties' approval of the agreement. *Id.* at 367. We also observed that the defendant had begun to take the action demanded by the suit prior to the time it was filed and had manifested no bad faith or obdurate conduct. *Id.* at 367–68.

■ The facts in this case do not compel a similar result. We have held that the parties did not intend to foreclose the recovery of fees under EAJA. The recovery therefore will not deprive the Secretary of the benefit of his bargain. The district court's determination that special circumstances did not require the denial of an award thus was not an abuse of discretion.

## V

### CALCULATION OF AWARD

Section 2412(d)(2)(A)(ii) establishes a cap on the hourly rate awardable under EAJA:

[A]ttorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee....

The district court concluded that a fee in excess of $75 per hour was warranted in this case because the litigation was complex and protracted and "[f]ew attorneys possess the special skills and qualifications needed to handle successfully the litigation and settlement activities required by this case." To determine the proper hourly amount, the court applied the factors approved by this court in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). Based on those factors, it found that an appropriate hourly rate for attorney Patricia Tenoso ranged from $85 per hour in 1976 to

$120 per hour in 1981 and that an appropriate hourly rate for attorney Mary Burdick ranged from $80 per hour in 1976 to $120 per hour in 1982. These findings were based on prevailing market rates for those years and on each attorney's experience.

■ We have recently indicated that the consideration of *Kerr* factors is appropriate in determining the amount of fees to be awarded under the EAJA. *Save Our Ecosystems v. Clark*, 747 F.2d 1240, 1251 (9th Cir.1984). *See also Action on Smoking & Health v. Civil Aeronautics Board*, 724 F.2d 211, 218 (D.C.Cir.1984) (factors such as the contingent nature of success, delay in payment, and quality of representation constitute "special factors" under the EAJA). The district court found that an hourly rate in excess of $75 was justified by several special factors, including the novelty and difficulty of the issues, the contingent nature of the fee, the undesirability of the case, the expertise of counsel, the amount involved and the results obtained, and the customary fees and awards in other cases. The district court did not abuse its discretion in concluding that the hourly rates requested by Western Center—ranging from $80 per hour for work in 1976 to $120 per hour for work in 1982— were appropriate and reasonable under the EAJA.

The Secretary's claim that Underwood is not entitled to fees for services performed prior to October 1, 1981 is without merit. *See Timms v. United States*, 742 F.2d at 493.

## VI

### USE OF MULTIPLIER

The district court calculated the fee award by multiplying the hours compensable for each year by that year's hourly rate. It then added the totals for each attorney for each year to derive a lodestar, to which the court finally applied a multiplier. It concluded that "a multiplier of 3.5 properly reflects the contingent nature of this case, its complexity, and, most importantly, the high quality of Western Cen-

ter's work, and the excellent results achieved."

Section 2412(d) contains no express authorization for the use of a multiplier. Underwood contends that Congress approved the use of a multiplier by its use of the term "special factor" in section 2412(d)(2)(A)(ii). She explains that that term has been used to justify the use of a multiplier for awards made under statutes other than EAJA, including the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988 (1982); Title VII, 42 U.S.C. §§ 2000e *et seq.* (1982); the Rehabilitation Act, 29 U.S.C. § 794 (1982); and the Clayton Act, 15 U.S.C. § 15 (1982).

■ We do not find Underwood's argument persuasive. Two important distinctions set EAJA apart from all the statutes which Underwood analogizes. The first is that EAJA alone places a specific dollar limit on the hourly rate to be awarded. Because the statutory limit is so precise, we refuse to inflate it by 350% without a stronger indication that Congress intended for us to do so.

■ Second, unlike the statutes that Underwood uses to illustrate her point, EAJA authorizes an award of fees against the United States. We must consider carefully the scope of the government's waiver of its sovereign immunity. We cannot order an award that has not been "specifically and unequivocally authorized by Congress." *Van Hoomissen v. Xerox Corp.,* 503 F.2d 1131, 1132 (9th Cir.1974). There is insufficient indication that Congress intended to expose the United States to compounds of the hourly rate. We therefore hold that a multiplier may not be applied to fees awarded under EAJA.

### VII

### CONCLUSION

Underwood is entitled to a reasonable attorneys' fee for litigation and settlement administration services performed in this case. Underwood's attorneys are entitled to be compensated at the hourly rate specified by the district court but are not enti-

tled to have a multiplier factor applied to that fee. The appellees are therefore entitled to an attorneys' fee in the amount of $322,700. Each party shall bear its own costs on appeal.

AFFIRMED in part, REVERSED in part.